MUNSON MEDICAL CENTER v AUTO CLUB INSURANCE
ASSOCIATION

Docket No. 177469. Submitted March 5, 1996, at Grand Rapids. Decided
August 23, 1996, at 9:10 A.M. Leave to appeal denied, 453 Mich 957.

Munson Medical Center brought an action in the Grand Traverse Cir-
cuit Court against Auto Club Insurance Association, seeking an
award of damages for unpaid billed charges submitted to the
defendant for medical services supplied by the plaintiff to persons
injured in automobile accidents for which the defendant was liable
for no-fault benefits. Instead of paying the full amount billed by the
plaintiff, the defendant paid according to the fee schedule promul-
gated under the Worker's Disability Compensation Act, which was
routinely a lesser amount. The trial court, Philip E. Rodgers, Jr., J.,
entered an order granting the plaintiff's motion to amend its com-
plaint, granting summary disposition for the plaintiff, and awarding
the plaintiff $100,141.66 plus interest. The trial court then denied
the defendant's motion for rehearing. The defendant appealed.

The Court of Appeals held:

1. Under the no-fault act, the defendant is required to pay the
"customary charges" for services rendered by the plaintiff. "Cus-
tomary charges" means the standard amount that the plaintiff bills
on behalf of every patient treated, regardless of the fact that the
plaintiff routinely accepts less than that amount in many cases, i.e.,
those involving Medicare, Medicaid, and Blue Cross and Blue
Shield of Michigan. In addition to the "customary charges" limita-
tion, the no-fault act also imposes a statutory qualification of rea-
sonableness on the amount that the plaintiff may charge the
defendant. The defendant's argument that "customary charges"
means the lesser amount that the plaintiff actually accepts in full
satisfaction of the bill for the services rendered, e.g., from Medi-
care, Medicaid, and Blue Cross, ignores the limitations placed on
the plaintiff by the federal statutes governing Medicare and Medi-
caid, by the state statutes governing Medicaid and worker's com-
pensation, and by the contractual arrangement between the plain-
tiff and Blue Cross.

2. The plaintiff bears the burden of proving both the reasonable-
ness and customariness of its charges. The plaintiff met its burden

in this case. The defendant failed to raise a genuine issue of fact regarding the plaintiff's interpretation of the term "customary charges" and left the plaintiff's asserted facts uncontroverted. The trial court properly granted summary disposition for the plaintiff.

3. If any harm was actually suffered by the defendant as a result of the trial court's failure to allow the defendant an opportunity to discover certain information from the plaintiff, the defendant bears the blame for any harm that occurred because its strategic decisions directly contributed to whatever error may have occurred.

4. The phrase "in cases not involving insurance" in MCL 500.3157; MSA 24.13157 means those situations where there is literally no insurance in the lay sense of the word, e.g., no Medicare, no Medicaid, and no Blue Cross.

5. The defendant must reimburse the plaintiff in accordance with the controlling statutory language of the no-fault act. The defendant's unilateral implementation of criteria imposed by other statutory schemes or contractual agreements after its failure to obtain an amendment of the no-fault act that would have permitted it to pay no-fault claims according to fee schedules must be rejected as a matter of law.

Affirmed.

1. INSURANCE — AUTOMOBILES — NO-FAULT — HEALTH-CARE PROVIDERS — "CUSTOMARY CHARGES" — "IN CASES NOT INVOLVING INSURANCE."

   A no-fault insurer of a person injured in an automobile accident is obligated to pay a health-care provider for the medical products, services, and accommodations provided to the insured as a result of the accident the amount the provider customarily charges for like products, services, and accommodations in cases not involving insurance; "customary charges" means the standard amount the provider bills on behalf of every patient treated and "in cases not involving insurance" means those situations where there is literally no insurance in the lay sense of the term, e.g., no Medicare, no Medicaid, and no Blue Cross and Blue Shield insurance; the amount that can be charged and must be paid also must be reasonable (MCL 500.3105, 500.3107, 500.3157; MSA 24.13105, 24.13107, 24.13157).

2. INSURANCE — AUTOMOBILES — NO-FAULT — HEALTH-CARE PROVIDERS — CHARGES — BURDEN OF. PROOF.

   A health-care provider seeking payment from a no-fault insurer for medical products, services, and accommodations provided to the insurer's insured as a result of an automobile accident bears the burden of proving both the reasonableness and the customariness

of its charges (MCL 500.3105, 500.3107, 500.3157; MSA 24.13105, 24.13107, 24.13157).

*Honigman Miller Schwartz & Cohn* (by *Michael A. Gruskin*) and Munson Healthcare (by *Stephen P. Clifton*, Corporate Vice President and General Counsel), for the plaintiff.

*Becker, Lanctot, McCutcheon, Schoolmaster, Taylor & Hom* (by *Clair W. Hoehn*) (*Gross, Nemeth & Silverman, P.L.C.*, by *Steven G. Silverman*, of Counsel), for the defendant.

Amicus Curiae:

*Mantese & Carozza, P.L.L.C.* (by *Gerard Mantese* and *Regis A. Carozza*), for Michigan Health and Hospital Association.

Before: SAAD, P.J., and MCDONALD and M. A. CHRZANOWSKI,[*] JJ.

SAAD, P.J. This case arises out of a payment dispute for medical services rendered and billed by plaintiff Munson Medical Center under the no-fault act to defendant Auto Club Insurance Association (ACIA). The dispute centers on the appropriate statutory amount ACIA is required to pay Munson under the no-fault act. ACIA appeals from the circuit court's order (1) granting Munson's motion to amend its complaint, (2) granting summary disposition pursuant to MCR 2.116(C)(10) against ACIA, and (3) entering judgment in favor of Munson in the amount of $100,141.66 plus interest. ACIA also challenges the trial court's denial of its motion for rehearing. We affirm on all grounds.

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.

I

BACKGROUND AND FACTS

Under Michigan's no-fault act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*, when a person is injured in an automobile-related accident, a hospital that provides medical care is to be reimbursed by the injured person's no-fault insurance company. Since 1973, a number of ACIA insureds were treated at Munson Medical Center for injuries arising out of automobile accidents. Historically, Munson would bill ACIA for the services, and, until 1992, ACIA paid the full no-fault amounts billed by Munson. However, beginning in 1992, ACIA stopped paying the entire amount of Munson's no-fault bills and began paying only a *portion* of the charges. It is undisputed that, instead of paying the full amount billed by Munson, ACIA began to pay Munson according to the fee schedule promulgated under the Worker's Disability Compensation Act, MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.* As a practical matter, payments made pursuant to this fee schedule were routinely less than the amount actually billed[1] by Munson to ACIA.

In December 1992, Munson filed suit against ACIA under the no-fault act for the unpaid portion of its bills. Munson thereafter amended its complaint to increase the amount of damages sought. In October 1993, Munson filed a motion for summary disposition

---

[1] The actual payments were calculated using a basic worker's compensation payment ratio, plus a "cost to charge" ratio for each specific hospital. ACIA explained that Munson's "cost to charge ratio" was 0.7, to which was added a thirteen percent "profit factor" for the hospital. Thus, if the amount billed was $100, application of the "cost to charge ratio" (0.7) rendered $70, plus the thirteen percent profit, which resulted in a payment of $79.10. ($100 x 0.7 = $70 $70 x 1.13 = $79.10).

pursuant to MCR 2.116(C)(9) (failure to state a valid defense) and MCR 2.116(C)(10) (no genuine issue of material fact). Munson argued (1) that ACIA made only partial payments to Munson, according to the payment schedule of the Worker's Disability Compensation Act, even though the injuries did not arise from employment, (2) that the worker's compensation payment schedule had not been promulgated pursuant to the no-fault act, and (3) that the no-fault act itself required payment of all of the insureds' allowable medical expenses. With its motion for summary disposition, Munson provided affidavits attesting that its charges were "customary" (because they were uniform to all who used its services, regardless of whether an insurer ultimately paid the entire amount billed), and that its charges were reasonable because none of the twenty-five to thirty other no-fault insurers with whom Munson dealt objected to the reasonableness of the charges. The unpaid portion of the bills at issue is $100,274.41.

ACIA opposed Munson's motion for summary disposition and sought summary disposition. Basically, ACIA argued that Munson was not entitled to summary disposition because Munson's motion was unsupported by competent evidence that its charges were reasonable or customary. In support of ACIA's own motion for summary disposition, ACIA argued that its payments accurately reflected what Munson's reasonable charges *should have been*, so that the resulting payments (computed according to the worker's compensation payment schedule) were reasonable as a matter of law. ACIA reasoned that hospitals such as Munson were unable to obtain adequate (full) payment from Medicare, Medicaid, and Blue Cross and Blue

Shield of Michigan (hereafter BCBSM) to cover the hospital's actual costs, and this meant that hospitals such as Munson would unfairly shift these unmet costs onto no-fault insurers like ACIA. ACIA further reasoned that this cost shifting resulted in unreasonable charges, so that ACIA could no longer accept Munson's charges as reasonable. Instead, ACIA determined that the worker's compensation payment scheme was a suitable objective measure of "reasonable" costs.

In a nutshell, ACIA complained that if it paid the *entire* bill submitted by Munson for a particular injury, it would be paying more than Medicare, Medicaid, or BCBSM would pay for the same injury. ACIA pointed out that a broken leg is a broken leg, whether broken on the job or in an automobile accident. Accordingly, it argued that it was unreasonable and unfair for ACIA to be billed by hospitals more to treat a broken leg because the leg was broken in an automobile accident rather than in a manner that is covered by Medicare, Medicaid, or BCBSM. Although Munson claimed that it billed everyone the same "customary charges" for the same services, ACIA argued that the customary charges were not "customary" at all, because Munson did not expect to receive and did not actually *receive* the same amount from all payors as payment in full.

The circuit court issued a bench opinion that granted summary disposition in favor of Munson. The court agreed with ACIA that the cost for treating identical broken legs should be identical for each patient, but noted that government regulation of the insurance and health-care industries prevented that result. The court therefore found that Munson had a legal right to payment in full of its "customary charges," but

expressly noted that in its view ACIA had the "high moral ground" with regard to its concerns about cost shifting. ACIA's subsequent motion for rehearing was denied as untimely and lacking substantive merit. This appeal followed.

On appeal, the Michigan Health and Hospital Association filed an amicus curiae brief in support of Munson. The brief discusses the fact that ACIA has not singled out Munson alone for it partial payments — in fact it has used the worker's compensation payment schedule to reduce payments at numerous hospitals across the state. The amicus curiae brief also discussed several lower court cases in which hospitals have been forced to litigate their claims against ACIA to obtain full payment for the medical services rendered to ACIA's insureds. Apparently, this is the first such case to reach this Court.

II

ANALYSIS

A. REASONABLE AND CUSTOMARY CHARGES.

ACIA's obligation to pay and Munson's right to be paid for the injureds' no-fault medical expenses arise pursuant to MCL 500.3105, 500.3107, and 500.3157; MSA 24.13105, 24.13107, and 24.13157, which provide in part as follows:

> Sec. 3105. (1) Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.
>
> Sec. 3107. (1) Except as provided in subsection (2), personal protection insurance benefits are payable for the following:

(a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.

Sec. 3157. A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. *The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance.* [Emphasis added.]

Under this statutory scheme, ACIA is required to pay the "customary charges" for services rendered by Munson. The critical issue in this case is what the statutory term "customary charges" means. Munson, of course, argues that "customary charges" means the standard amount it *bills* on behalf of every patient treated, regardless of the fact that Munson routinely *accepts* less than this amount in many cases (Medicare, Medicaid, and BCBSM insured cases). ACIA argues that "customary charges" means the lesser amount that Munson actually *accepts* in full satisfaction of the bill for the services rendered. ACIA argues on appeal that the lower court erred in construing MCL 500.3157; MSA 24.13157 according to the meaning urged by Munson. We disagree and therefore affirm the decision of the trial court.

A trial court's grant of summary disposition is reviewed de novo by this Court to determine whether the prevailing party was entitled to judgment as a matter of law. *Borman v State Farm Fire & Casualty Co*, 198 Mich App 675, 678; 499 NW2d 419 (1993).

Statutory construction is a question of law for the court. See *Aikens v Dep't of Conservation*, 387 Mich 495, 499; 198 NW2d 304 (1972).

This Court recently considered ACIA's proffered construction of the term "customary charge" and found ACIA's position "untenable . . . in light of the clear statutory language of § 3157." *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 113; 535 NW2d 529 (1995).[2] In *Hofmann*, ACIA argued that the amount BCBSM paid to the plaintiff health-care providers[3] should serve as the benchmark for determining the amount of plaintiffs' "customary charges" for x-rays. This Court disagreed:

> We find that ACIA's reasoning is flawed.
>
> ACIA's reasoning is premised on the principle that BCBSM's "payments" to plaintiffs for x-rays, as opposed to plaintiffs' "charges" to BCBSM for those x-rays, are the proper criteria to be used in determining the plaintiffs' "customary charge" for x-rays. This position is untenable, however, in light of the clear statutory language of § 3157, which states that a "charge" in a no-fault case "shall not exceed the amount [a] person or institution customarily *charges* for like products, services and accommodations in cases not involving insurance" (emphasis added). Thus, ACIA's reliance on the amount that was "paid" by BCBSM, as opposed to the amount that plaintiffs "charged," is unwarranted.
>
> Furthermore, ACIA's position ignores the fact that the amounts that plaintiffs receive in payment from BCBSM are subject to contractual limitations, whereas the amounts that ACIA must pay for covered medical expenses are not limited contractually. [*Hoffman, supra* at 113 (emphasis in original).]

---

[2] *Hoffmann* was released after ACIA's briefs were filed on appeal.

[3] The plaintiffs were two chiropractors, who had treated certain patients injured in automobile accidents and then submitted no-fault bills to ACIA for payment.

We find that ACIA's reasoning is flawed.

The *Hofmann* Court specifically noted that, " '[w]hile health and accident carriers generally are free to [place dollar limits upon the amounts they will pay to doctors and hospitals for particular services], a no-fault insurer is not.' " *Id.*, quoting *Auto Club Ins Ass'n v New York Life Ins Co*, 440 Mich 126, 139; 485 NW2d 695 (1992). " 'Only the statutory qualification of reasonableness limits the amount that must be paid by a no-fault carrier for covered medical expenses.' " *Hofmann, supra* at 113-114, quoting *New York Life Ins Co, supra* at 139. The *Hofmann* Court continued its reasoning:

> In essence, ACIA is asking this Court to establish a rule that, in situations where other health or accident insurance coverage does not exist, the obligation of a no-fault carrier must be limited to what a health insurer would have had to pay if health insurance existed, notwithstanding that the health insurer's obligation might be controlled by contract, whereas the no-fault carrier's is not. This position does not find support in the no-fault act.

> We note that the absence of contractual limitations in no-fault situations does not give health-care providers liberty to charge no-fault insurers any amount. In addition to the "customary charge" limitation discussed above, §§ 3107 and 3157 also impose a statutory qualification of reasonableness, such that a no-fault carrier is liable only for those medical expenses that constitute a reasonable charge for the product or service. In this case, however, ACIA has not challenged the reasonableness of the x-ray charges that comprise the basis of its § 3157 counterclaim for reimbursement.

> Accordingly, because ACIA acknowledges that it was charged approximately the same amount for x-rays that plaintiff charged BCBSM, and because ACIA did not present evidence of plaintiffs' customary charges for x-rays in other cases, we are constrained to conclude that ACIA failed to

establish a § 3157 overcharge violation with respect to x-ray services. [*Hofmann, supra* at 114 (citations omitted).]

In the instant case, ACIA's proffered definition of "customary charges" is the same one that was rejected by *Hofmann,* although ACIA's benchmark is broader here than it was in *Hofmann.* (Here, ACIA defines the benchmark as the amount that Munson received from Medicare, Medicaid, BCBSM, and arguably, worker's compensation.) And, as in *Hofmann,* ACIA ignores the limitations placed upon Munson by the federal statutes governing Medicare and Medicaid, by the state statutes governing Medicaid and worker's compensation, and by the contractual arrangement between Munson and BCBSM. Defendant's argument therefore fails for the same reasons it did in *Hofmann.*

### B. BURDEN OF PROOF.

ACIA next addresses the burden of proof and correctly states that Munson bears the burden of proving both the reasonableness and the customariness of its charges according to *Nasser v Auto Club Ins Ass'n,* 435 Mich 33, 49; 457 NW2d 637 (1990). ACIA contends that Munson failed to prove that the entire amount charged was the usual, ordinary, or common amount that a no-fault insurer expects to pay and that a health-care provider like Munson expects to be paid. ACIA also argues that the circuit court erred in failing to grant ACIA's motion for summary disposition after Munson failed to meet its burden of proof.

ACIA's argument is premised on the belief that its statutory construction would prevail; however, as shown above in *Hofmann,* ACIA's definition of "customary charges" is erroneous. Moreover, ACIA's argu-

ment appears to be based upon a misperception of how Munson met its burden of proof in the context of a motion for summary disposition. A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual support of a claim to determine whether the moving party is entitled to judgment as a matter of law, and a court decides the motion on the basis of the pleadings, affidavits, depositions, admissions, and other available evidence. *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993). The moving party must specifically identify the issues on which there are no disputed facts, and that party also must support its position with affidavits, depositions, or other documentary evidence. *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994); MCR 2.116(G) (4). The opposing party bears the burden of showing by evidentiary materials that a dispute exists regarding a genuine issue of material fact. *Skinner v Square D Co*, 445 Mich 153, 160; 516 NW2d 475 (1994).

Munson recognized that there was a dispute regarding a question of law (how to interpret the statute), but claimed that there were no disputed facts regarding whether the charges for medical services rendered to ACIA's insureds were Munson's customary charges. Munson supported its position with an affidavit of Edward Carlson, which stated that all parties were billed the same charge and that none of the twenty-five to thirty other no-fault insurers had ever claimed that Munson's charges were either unreasonable or not customary charges. This was sufficient to meet Munson's burden under *Patterson*.

On the other hand, ACIA did not provide documentary evidence that identified specific facts to show that there was a dispute of material fact over whether

the charges for medical services were Munson's customary charges. Instead, ACIA argued for its statutory interpretation of the term "customary charges" and reasoned that, *under its construction of the term*, Munson had failed to carry its burden of proving that the charges were customary. However, this failed to raise a genuine issue of fact regarding Munson's interpretation, and left Munson's asserted facts uncontroverted. With no contested facts, the only remaining task for the court was to determine whether Munson was entitled to judgment as a matter of law. *Radtke, supra.* Because the circuit court determined that Munson's statutory interpretation was correct as a matter of law, the court properly granted summary disposition for Munson pursuant to MCR 2.116(C)(10)[4].

### C. DISCOVERY.

ACIA next contends that the circuit court improperly granted summary disposition without permitting ACIA the opportunity to discover certain information from Munson. ACIA asserts that this problem resulted from Edward Carlson's refusal to answer certain questions during deposition and that the circuit court directed Munson to provide certain information when the subject arose during a settlement conference. Assuming, without deciding, that any harm was actu-

---

[4] ACIA also argues that the circuit court erred to the extent that it relied upon the amendatory language of 1993 PA 143 when interpreting the no-fault statute — 1993 PA 143 became Proposal C, which was rejected in the November 1994 general election. ACIA's brief neglected to mention that its counsel had, himself, engaged the circuit court in discussion about the amendment. Assuming that there was any resulting error, ACIA contributed to it, and cannot complain on appeal about error to which it contributed. *Bloemsma v Auto Club Ins Ass'n (After Remand)*, 190 Mich App 686, 691; 476 NW2d 487 (1991).

ally suffered, we note three sets of facts that lead to the conclusion that defendant bears the blame for any harm that occurred. First, following Carlson's deposition, ACIA did not file a motion to compel pursuant to MCR 2.313.

Second, there is no record evidence to support ACIA's assertion that the circuit court directed Munson to provide the information. The parties disagree about the details of providing any information, and we were unable to find any order, stipulation, memorandum, or other memorial of such an agreement that would provide a factual basis for reviewing the details in dispute.

Third, ACIA did not argue this issue in its response to Munson's motion for summary disposition, either in its own motion for summary disposition or orally during the hearing regarding the motions. The first time that ACIA argued this issue was during its motion for rehearing. The circuit court found that the motion was untimely and lacked merit. An appellant cannot contribute to error by plan or design and then argue error on appeal. *Bloemsma v Auto Club Ins Ass'n (After Remand)*, 190 Mich App 686, 691; 476 NW2d 487 (1991). This is precisely what ACIA appears to have done in this case; ACIA's strategic decisions directly contributed to whatever error may have occurred. *Id.*

### D. "IN CASES NOT INVOLVING INSURANCE."

ACIA argues that the circuit court erroneously interpreted the phrase "in cases not involving insurance"

in § 3157.[5] ACIA asserts that the phrase means "not involving *no-fault* insurance." (Thus, according to ACIA, it *is* appropriate to consider the amounts paid to Medicaid, Medicare, and BCBSM.) According to ACIA, Munson's interpretation of the phrase means, "in cases not involving *non-insurance based payors*," (i.e. *not including* payments made to Medicaid, Medicare, and BCBSM). As we have discussed previously, § 3157 was addressed in *Hofmann, supra*. There, the plaintiffs were chiropractors who charged different patients varying amounts, depending upon whether the patient had insurance. The plaintiffs claimed that they had not violated § 3157 because their "customary charge" billed to ACIA was the same amount that they billed other health insurers. (It was undisputed that the plaintiffs routinely billed individuals without any insurance an amount *less* than this "customary charge.") The Court rejected the plaintiffs' argument that the "customary charge" was the amount billed to all *insurers*:

> First, from a legal standpoint, whether there has been an impermissible § 3157 overcharge is determined by looking to the provider's customary charge "in cases not involving insurance." Thus, a provider cannot avoid committing a § 3157 overcharge violation simply by claiming, as plaintiffs attempt to do here, that the amount charged in a no-fault case is the "customary charge," when in fact the provider customarily charges a lesser amount in cases not involving insurance.

*        *        *

---

[5] "The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance." MCL 500.3157; MSA 24.13157.

... [T]he relevant inquiry under § 3157 is not the amount
that is customarily charged to other health insurers, but
rather the amount that is customarily charged "in cases not
involving insurance." [*Hofmann, supra* at 104-105, 107.]

From this, it is obvious that the phrase "in cases
not involving insurance" means those situations
where there is literally no "insurance" in the lay sense
of the term — no Medicare, no Medicaid, no BCBSM,
and so forth. ACIA's argument to the contrary fails.

### E. FAIRNESS.

While the circuit court makes a good point that ACIA
has a strong equitable argument, ACIA's unilateral deci-
sion to reimburse Munson according to the worker's
compensation scheme cannot be upheld given the
controlling statutory language of the no-fault act. In
1992, ACIA sought passage of a referendum, Proposal
D, which would have permitted ACIA to pay no-fault
claims according to fee schedules (and which
required ACIA to reduce its premiums). Proposal D
was soundly rejected. Again in 1994, ACIA attempted to
obtain passage and approval of similar amendments,
which would have expressly incorporated the
worker's compensation fee schedules[6] with an accom-
panying premium rollback. Again the effort was
unsuccessful. Despite its failure to obtain an amend-
ment of the no-fault law, ACIA nonetheless unilaterally
implemented the result it wanted. ACIA's use of crite-
ria imposed by other statutory schemes or contrac-
tual agreements is hereby rejected as a matter of law.
We affirm the ruling of the circuit court.

---

[6] Proposal C would have provided for payment of charges at the greater
of the worker's compensation rates or 110 percent of BCBSM rates.

We note for the record the excellent quality of all the briefs on appeal and the oral argument presented by both parties and the amicus curiae, Michigan Health and Hospital Association.

Affirmed.