# STATE OF MICHIGAN

# COURT OF APPEALS

AFFILIATED DIAGNOSTICS OF OAKLAND,

Plaintiff-Appellant,

v

FARMERS INSURANCE EXCHANGE,

Defendant-Appellee.

UNPUBLISHED
May 26, 2016

No. 325873
Wayne Circuit Court
LC No. 14-007445-AV

Before: OWENS, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Plaintiff appeals by leave granted a circuit court order vacating two orders entered by the district court in this action under the no-fault act, MCL 500.3101 *et seq.*[1] For the reasons set forth in this opinion, we affirm in part and reverse in part.

This appeal arises from a motor vehicle accident involving Aretha Robinson. Approximately three months after the accident, Robinson saw Dr. Tete Oniang'o, who ordered MRIs of Robinson's right shoulder and lumbar spine. The MRIs were performed at plaintiff's MRI facility. Plaintiff billed defendant $9,900 for the MRIs ($4,950 for each) and defendant refused to pay. When asked how he established the rate of $4,950, Dr. Warren Ringold, medical director for plaintiff testified:

> When I opened my facility in September of 2011 I had Amy Saad who is not here today, she's out. She had a baby last week. That's why she's not here. I along with her called all the free standing MRI Centers that were in Oakland County and we got pricing from them. And we elected to neither be the highest price nor the lowest price. We sort of came in the middle. And that's how we established our pricing to begin with. We about a year later changed the price on two MRI's. I left that entirely up to Amy I asked her to periodically call other

---

[1] The district court granted judgment in favor of plaintiff after a jury trial, awarded attorney fees in favor of plaintiff, and denied defendant's motion for judgment notwithstanding the verdict (JNOV).

-1-

free standing facilities to see what they were billing to try to keep pace with people.

Dr. Ringold testified that his rates were different than that of a hospital radiology group, and explained:

> Radiologist[s] at a hospital like Beaumont or Oakwood or Providence have a captive audience. They have anywhere from 800 to a 1000, two hundred doctors who are on staff ordering their MRI's and their Cat-scans. They're open 24 hours a day, 7 days a week year round. And they also receive Federal funding and Federal support. So we don't have that capability. I can't be open 24 hour days, I don't have captive audience. I have to pay marketers to try to go out and see if we can get business from doctors or other clinics. So we can't compete with hospitals in terms of fees. The fees at all free standing clinics in Oakland County all are substantially higher than hospitals.

Dr. Ringold testified that his billing is the lowest of the stand-alone facilities in his community and that a little over a week before trial, Dr. Ringold's employees called each of the free standing clinics in Oakland County and obtained their rates. He testified that Oakland MRI charges $5,400 for an MRI of the lumbar spine and $5,400 for an MRI of the cervical spine; Bio Mag also charges $5,400 for each; Clear Imaging charges $5,300 for each; Horizon charges $5,300 for each; plaintiff charges $4,950 for each; and Botsford Hospital charges $2,925 for each. Following trial in district court, a jury returned a verdict in plaintiff's favor. Thereafter, the district court denied defendant's motion for judgment notwithstanding the verdict (JNOV) and awarded plaintiff attorney fees. Defendant appealed to the circuit court, which reversed the judgment for plaintiff based on its conclusion that plaintiff failed to establish what circuit court entitled "its burden of proof" regarding the customariness of plaintiff's charges. Plaintiff then filed leave to appeal with this Court, which was granted.[2]

## I. WHETHER PLAINTIFF FAILED TO ESTABLISH CUSTOMARINESS

On appeal, plaintiff argues that the customary nature of charges is not part of their prima facie case. Rather, plaintiff argues, the customary nature of the charges is an affirmative defense and the defendant must present evidence that the provider charger a different rate for the exact same services when insurance is not paying the bill. Additionally, plaintiff argues, defendant did not brief this issue in circuit court, did not argue it before the district court and did not raise it in oral argument in either the district or circuit court. Therefore, plaintiff argues, defendant has waived the issue.

Defendant argues that plaintiff was required to establish that the charges it sought did not exceed the amount it customarily charges in cases not involving insurance in order to meet plaintiff's burden of proof that the charges were reasonable.

---

[2] *Affiliated Diagnostics of Oakland v Farmers Ins Exch,* unpublished order of the Court of Appeals, entered August 14, 2015 (Docket No. 325873).

Our review of the record and case law leads us to conclude that defendant has waived this issue.

This Court reviews de novo questions of law, including which party bears the burden of proof. *Pierron v Pierron*, 282 Mich App 222, 243; 765 NW2d 345 (2009), aff'd 486 Mich 81 (2010). The issue of waiver is also a question of law reviewed de novo. *Electrolines, Inc v Prudential Assurance Co, Ltd*, 260 Mich App 144, 163; 677 NW2d 874 (2003). The trial court's factual determinations regarding a waiver claim are reviewed for clear error. *Id*.

MCL 500.3107(a) provides, in relevant part, that personal protection insurance benefits are payable for

> [a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.

In addition, MCL 500.3157 provides:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance.

"[W]hether there has been an impermissible § 3157 overcharge is determined by looking to the provider's customary charge 'in cases not involving insurance.'" *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 104; 535 NW2d 529 (1995). This Court has stated that the provider bears the burden of proving the reasonableness and the customariness of its charges. In *Munson Med Ctr v Auto Club Ins Ass'n*, 218 Mich App 375, 385; 554 NW2d 49 (1996), this Court, citing *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 49; 457 NW2d 637 (1990) stated: "[Plaintiff] bears the burden of proving both the reasonableness and the customariness of its charges . . . ." Thus, plaintiff's contention that customariness is an affirmative defense is not supported by case law. In fact, our Supreme Court and this Court have both held that plaintiff bears the burden of proving both reasonableness and the customariness of the charges. Accordingly, the circuit court did not err when it concluded that plaintiff had the burden of proof on this issue. However, such a finding does not end our inquiry. Although plaintiff had the burden of proving the customariness of its charges, the circuit court erred by reversing on the ground that plaintiff failed to establish its burden. This Court has stated:

> [I]nvited error is typically said to occur when a party's own affirmative conduct directly causes the error. Under the invited-error doctrine, appellate relief is generally not available because "when a party invites the error, he waives his right to seek appellate review, and any error is extinguished." A related rule is that error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence.

[*Moody v Home Owners Ins Co,* 304 Mich App 415, 438-439; 849 NW2d 31 (2014) (citations and quotation marks omitted).]

In this case, defendant initially asserted in its affirmative defenses that the benefits claimed were not customary and argued in its opening statement that plaintiff had to prove that the charges were customary. However, it did not argue the issue of customariness in its motion for a directed verdict or closing argument. There was also no instruction to the jury on customariness, and defense counsel stated his satisfaction with the instructions. Further, there was no question regarding whether the charges were customary on the special verdict form. The verdict form did ask whether the charges were reasonable, but reasonableness and customariness are separate inquiries. *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 376; 670 NW2d 569 (2003), aff'd 472 Mich 91 (2005) ("*AOPP*"). See also, *Nasser*, 435 Mich at 49. Thus, the jury was not asked to decide the customariness issue. Defendant did not raise the issue until its motion for JNOV. Even then, however, defendant did not expressly argue that plaintiff failed to show that its charges were the same as those charged in cases not involving insurance. Rather, as the circuit court acknowledged, it was the circuit court that first focused on the insurance comparison. Moreover, at the time that defendant filed its motion for JNOV, the issue was already waived. We therefore conclude following our review of the record that customariness was not a contested issue at trial and by failing to contest the issue at trial, defendant invited or contributed to the error it now alleges.[3] Accordingly, the circuit court erred by reversing on the ground that plaintiff failed to establish the customariness of the charges.

## II. WHETHER ALTERNATIVE GROUNDS TO AFFIRM EXIST

Defendant contends that this Court should affirm the circuit court's decision on the alternative grounds that (1) Dr. Oniang'o's discovery-only deposition was improperly presented to the jury, Dr. Oniang'o was not qualified to offer an expert opinion in this matter, and without his testimony plaintiff could not meet its burden of proof; (2) plaintiff failed to establish that the MRI services were incurred by Robinson; and (3) plaintiff failed to establish that the charges were reasonable. We disagree with each of these claims.

"This Court reviews a trial court's decision to admit evidence for an abuse of discretion; however, when the trial court's decision involves a preliminary question of law, such as whether a statute precludes the admission of evidence, a de novo standard of review is employed." *Detroit v Detroit Plaza Ltd Partnership*, 273 Mich App 260, 275-276; 730 NW2d 523 (2006).

---

[3] In so ruling, we emphasis that we are cognizant that plaintiff still possessed the burden to establish the customariness of the charges. Dr. Ringold's testimony, as quoted above, satisfied plaintiff's burden. Additionally, defendant did not refute Dr. Ringold's testimony relative to the issue of customariness. This Court observed in *Munson*, 218 Mich App at 386-386 an almost identical fact pattern. In *Munson*, defendants ACIA argued on appeal that plaintiff Munson had failed to meet its burden of proving customariness. In rejecting ACIA's claim, this Court held: "On the other hand, ACIA did not provide documentary evidence that identified specific facts to show that there was a dispute of material fact over whether the charges for medical services were Munson's customary charges." We find an almost identical factual situation in this case.

"An abuse of discretion occurs when the court's decision results in an outcome that falls outside the range of principled outcomes." *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 528; 872 NW2d 412 (2015).

This Court reviews "de novo a trial court's ruling on a motion for JNOV. A motion for . . . JNOV should be granted only if the evidence viewed in [the light most favorable to the nonmoving party] fails to establish a claim as a matter of law." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 15; 837 NW2d 686 (2013) (citations and quotation marks omitted).

## A. DR. ONIANG'O'S DEPOSITION TESTIMONY

In support of its argument that Dr. Oniang'o's discovery-only deposition was not properly admitted at trial, defendant relies on this Court's decision in *Petto v Raymond Corp*, 171 Mich App 688; 431 NW2d 44 (1988). In *Petto*, the plaintiff argued that the trial court abused its discretion by excluding a deposition from trial. *Id*. at 690. This Court disagreed, stating that the parties understood that the deposition had been noticed for the purpose of discovery, and the defendant believed the witness would testify at trial where the defendant would have the opportunity to cross-examine him regarding his opinion and other matters. *Id*. at 692. The defendant argued that it had "conducted extensive preparations to cross-examine [the witness] at trial based on what it learned from him in the discovery deposition." *Id*. at 691-692. This Court stated that the plaintiff should have noticed the deposition for use at trial and, although the defendant did not seek or obtain a protective order, such a request would have only been required had the plaintiff noticed the deposition to be used at trial and the defendant wanted the deposition to be used only for the purpose of discovery. *Id*. at 692.

MCR 2.302(C)(7), pertaining to protective orders, allows a party to obtain an order "that a deposition shall be taken only for the purpose of discovery and shall not be admissible in evidence except for the purpose of impeachment." MCR 2.308(A) provides that "[d]epositions or parts thereof shall be admissible at trial or on the hearing of a motion or in an interlocutory proceeding only as provided in the Michigan Rules of Evidence." MRE 804(b)(5) is an exception to the hearsay rule for deposition testimony where the declarant is unavailable; it provides:

> *Deposition Testimony.* Testimony given as a witness in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

The definition of "unavailable" includes where the declarant "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means . . . ." MRE 804(a)(5).

Plaintiff does not dispute that Dr. Oniang'o's deposition was noticed for discovery purposes only. Plaintiff did not notice the deposition to be used at trial and defendant, therefore, was not required to seek a protective order. See *Petto*, 171 Mich App at 692. Nonetheless, we

disagree with defendant's suggestion that there is a blanket prohibition on the use of discovery-only depositions at trial. In *Petto*, this Court applied the abuse of discretion standard and concluded that the defendant did not have an opportunity to cross-examine the witness on certain matters. *Id*. at 690-693. There is no court rule that expressly excludes from trial depositions that are noticed for discovery purposes only, and MCR 2.308(A) provides that depositions shall be admissible at trial as provided in the Michigan Rules of Evidence. Thus, the circuit court properly considered whether the deposition testimony was admissible under the hearsay exception for deposition testimony, MRE 804(b)(5). Moreover, MRE 804(b)(5) involves a similar consideration as in *Petto*, i.e., whether the party against whom the testimony is offered had an opportunity and similar motive to develop the testimony.

The circuit court properly found that Dr. Oniang'o was unavailable under MRE 804(a)(5) because he was subpoenaed and failed to appear at trial.[4] Both courts also found that defendant had a sufficient opportunity to examine Dr. Oniang'o at the deposition. Defendant argued in the circuit court, however, that it would have asked Dr. Oniang'o about his qualifications in order to attempt to establish that he did not have the expertise to render an opinion regarding whether the MRI services were necessary. But in the deposition testimony presented at trial, defendant asked Dr. Oniang'o about his qualifications, and Dr. Oniang'o testified that he was a medical doctor (M.D.), he was not board-certified, his specialty was in non-surgical trauma, and he did not have hospital privileges. In closing, defendant argued that Dr. Oniang'o was not a specialist. Unlike the defendant in *Petto*, 171 Mich App at 691-692, defendant did not argue in the district court that he extensively prepared to cross-examine Dr. Oniang'o at trial based on matters learned at the deposition. To the extent defendant would have showed that Dr. Oniang'o did not complete a residency and was reprimanded, the jury could still have found that the MRIs were reasonable and necessary, as discussed below. Under the facts of this case, the district court did not abuse its discretion in admitting the deposition testimony of Dr. Oniang'o at trial.

Defendant also contends that Dr. Oniang'o could not be qualified as an expert to testify regarding whether the MRIs were reasonable and necessary. Plaintiff, however, did not seek to qualify Dr. Oniang'o as an expert at trial, and defendant did not argue at trial that Dr. Oniang'o's deposition testimony should be excluded because he was not an expert. Defendant raised this issue for the first time in its motion for JNOV. Nonetheless, this Court has held that "direct and circumstantial evidence, and permissible inferences therefrom, may be considered by the jury to determine whether there is sufficient proof that the expenses were both reasonable and necessary." *Kallabat v State Farm Mut Auto Ins Co*, 256 Mich App 146, 152; 662 NW2d 97 (2003). In *Kallabat*, this Court concluded that the plaintiff was not required to provide direct testimony from his treating doctors that every expense was reasonable and necessary. *Id*. This Court also did not say that the treating physician had to be qualified as an expert, or that expert testimony was required.

---

[4] Defendant does not argue on appeal, and has never argued, that the deposition was not taken in compliance with the law. See MRE 804(b)(5).

In this case, Dr. Oniang'o was an M.D., who specializes in non-surgical trauma, and was Robinson's treating physician. He testified that he examined Robinson and prescribed the MRIs based on her complaints of pain, decreased range of motion, and weakness, and in order to rule out a tear in her shoulder. He also testified that he does not send patients to another doctor until he determines what it going on with the patient. Dr. Ringold testified that while the MRI of the lumbar spine did not reveal an acute injury, the MRI of the shoulder revealed a tear. Viewing this evidence in the light most favorable to plaintiff, the jury could find that the MRIs were reasonable and necessary. Therefore, the district court properly denied defendant's motion for JNOV on this ground, and the circuit court properly affirmed that decision.

## B. WHETHER THE MRI EXPENSES WERE INCURRED

The Michigan Supreme Court has held that "[t]o 'incur' means '[t]o become liable or subject to, [especially] because of one's own actions.'" *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 484; 673 NW2d 739 (2003) (citation omitted). Although Robinson did not testify that she underwent the MRIs or became liable for the expenses, Dr. Oniang'o testified that he ordered the MRIs, Dr. Ringold testified regarding his records of Robinson coming to plaintiff's facility, Dr. Ringold had the prescription from Dr. Oniang'o, and Dr. Ringold had the results of the MRIs. There was also express testimony from Dr. Ringold that Robinson had an MRI of her lumbar spine. Plaintiff also billed defendant for the MRIs. Based on this evidence, the jury could find that the expenses for the MRIs were incurred.

## C. WHETHER PLAINTIFF'S CHARGES WERE REASONABLE

This Court stated in *AAOP*, 257 Mich App at 376, that "the 'customary charge' limitation in § 3157 and the 'reasonableness' language in § 3107 constitute separate and distinct limitations on the amount health-care providers may charge and what insurers must pay with respect to victims of automobile accidents who are covered by no-fault insurance." This Court further held:

> [T]he "customary" fee a particular provider charges under § 3157 does not define what constitutes a "reasonable charge" under § 3107. Rather, the "customary fee" is simply the cap on what health-care providers can charge, and is not, automatically, a "reasonable" charge requiring full reimbursement under § 3107. [*Id.* at 377 (citation omitted).]

This Court also stated:

> [T]he statute requires that an insurer only pay on behalf of the insured a "reasonable" charge for the particular product or service. However, the Legislature has not defined what is "reasonable" in this context, and, consequently, insurers must determine in each instance whether a charge is reasonable in light of the service or product provided. It may be that a health-care provider's "customary" charge is also reasonable given the services provided, while at other times the "customary" charge may be too high, and thus unreasonable. Either way, the trier of fact will ultimately determine whether a charge is reasonable. [*Id.* at 379 (citation omitted).]

-7-

In rejecting the plaintiff's argument that insurers must pay the customary charges without regard to the reasonableness of the charges, this Court explained that such "argument would, in essence, allow health-care providers to unilaterally determine the 'reasonable' charge to be paid by the insurer by establishing their own customary charges." *Id*. at 375, 377.

Plaintiff relies on Dr. Ringold's testimony regarding plaintiff's fees for MRIs compared to the fees charged by other facilities in Oakland County. According to Dr. Ringold's testimony, plaintiff's prices were lower than the other facilities, except Botsford Hospital, which he testified was not a free-standing facility and could not be used for comparison. Defendant contends that this testimony regarding plaintiff's prices compared to other facilities could not alone establish reasonableness. However, evidence of what other facilities in the area charge for similar services is relevant to whether charges are reasonable. See *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 669; 819 NW2d 28 (2011) (concluding that the rates charges by an agency to provide attendant-care service is relevant to the reasonable rate charged by a relative caregiver). See also *Manley v Detroit Auto Inter-Ins Exch*, 127 Mich App 444, 455; 339 NW2d 205 (1983), remanded by 425 Mich 140 (1986) (stating that "comparison to rates charged by institutions provides a valid method for determining whether the amount of an expense was reasonable and for placing a value on comparable services performed by [family members]").[5] And even if there was no evidence of plaintiff's customary charge, which would be the cap on what plaintiff could reasonably charge, defendant waived the customariness issue. Based on Dr. Ringold's testimony, the jury could find that the charges were reasonable.[6]

### III.  WHETHER THE AWARD OF ATTORNEY FEES WAS PROPER

Finally, plaintiff contends that the district court properly awarded attorney fees, and the circuit court erroneously reversed that decision based on the customariness issue. Defendant contends that this Court should affirm the circuit court's decision on the attorney fees issue based on the alternative ground that defendant produced evidence revealing legitimate questions of factual uncertainty. We agree with both parties and conclude that although the circuit court erroneously reversed the district court's award of attorney fees based on its ruling on the customariness issue, there are alternative grounds to affirm the circuit court's decision.

---

[5] In *Douglas v Allstate Ins Co*, 492 Mich 241, 275-276; 821 NW2d 472 (2012), the Michigan Supreme Court held that it is "[t]he compensation actually paid to caregivers who provide similar services," not the agency rate, that is relevant to the determination of a reasonable charge for services by family members.

[6] Plaintiff also relies on the testimony of defendant's claims representative, Nicole Sanders that a bill from plaintiff in another case for the same type of MRI as performed in this case was recommended for payment in the amount of $3,829. Although defendant claims this is not relevant, it does not argue that the testimony was improperly admitted, and the jury could find that the charges were reasonable even without this testimony.

In *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008), our Supreme Court stated the standard of review in a case involving the assessment of attorney fees under MCL 500.3108 as follows:

> The Court reviews de novo issues of statutory interpretation. The trial court's decision about whether the insurer acted reasonably involves a mixed question of law and fact. What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact. This Court reviews de novo questions of law, but we review findings of fact for clear error. A decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. Moreover, we review a trial court's award of attorney fees and costs for an abuse of discretion. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. [Citations and quotation marks omitted.]

MCL 500.3148(1) provides:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

In *Moore*, 482 Mich at 517, the Court stated:

> MCL 500.3148(1) establishes two prerequisites for the award of attorney fees. First, the benefits must be overdue, meaning "not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). Second, in postjudgment proceedings, the trial court must find that the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." MCL 500.3148(1). Therefore, assigning the words in MCL 500.3142 and MCL 500.3148 their common and ordinary meaning, "attorney fees are payable only on overdue benefits for which the insurer has unreasonably refused to pay or unreasonably delayed in paying." [Last citation omitted.]

"[A]n insurer's refusal to pay benefits is not unreasonable [i]f the insurer's refusal or delay in payment is the product of a legitimate question of statutory construction, constitutional law, or a bona fide factual uncertainty." *Moore*, 482 Mich at 520 (citation and quotation marks omitted). "The plain language of MCL 500.3101 *et seq.* does not impose an independent duty on insurers to 'go beyond' the medical opinion of their physicians and the IMEs that those physicians perform." *Id*. at 522. Rather, "[t]he determinative factor in our inquiry is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable." *Id*. (citation and quotation marks omitted).

In *Bonkowski v Allstate Ins Co*, 281 Mich App 154, 172; 761 NW2d 784 (2008), the jury returned a verdict in favor of the plaintiff and found that the benefits were more than 30 days overdue. This Court concluded that, while the trial court stated that it found that the defendant unreasonably refused to make proper payment, it did not make any factual findings supporting that conclusion. *Id*. Rather, it appeared that the trial court "only considered the jury's conclusion that [the plaintiff's father] was entitled to greater compensation than that offered by defendant." *Id*. This Court held that the trial court clearly erred by simply basing its conclusion on the jury's verdict. *Id*.

In this case, defendant does not dispute that the benefits were not paid within 30 days and, thus, were overdue. However, defendant argues that its refusal to pay was reasonable. The district court found that the jury had determined that defendant should not have denied the claim and, therefore, it concluded that plaintiff was entitled to attorney fees. Similar to the trial court in *Bonkowski*, the district court clearly erred by relying solely on the jury's verdict and, instead, was required to consider whether there were bona fide factual uncertainties. See *Moore*, 482 Mich at 520.

We conclude as a matter of law that defendant satisfied its burden of establishing that its refusal to pay plaintiff was based on bona fide and legitimate factual uncertainties. See *Bonkowski*, 281 Mich App at 172. Defendant's claims representative, Nicole Sanders, testified that she recommended sending the case to an independent medical doctor because the accident was very low impact, Robinson's primary care doctor did not recommend further treatment, there were inconsistencies in the records, and because of the length of time between the accident and Robinson's treatment. Dr. Daniel Ryan reviewed the records in February 2013 and concluded that the MRIs were not reasonably necessary. He also performed an independent medical examination in July 2013 and concluded that the MRIs were not reasonably necessary. Defendant was not required to reconcile the conflicting medical opinions. *Moore*, 482 Mich at 521-522. Based on the records and Dr. Ryan's opinions, defendant had bona fide factual uncertainties. Thus, although the circuit court reversed based on its erroneous ruling on the customariness issue, its decision to reverse the award of attorney fees was proper because defendant's refusal to pay was not unreasonable.

Affirmed in part and reversed in part. Neither party having prevailed in full, no costs are awarded. MCR 7.219. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens