DEPARTMENT OF TREASURY v COMERICA BANK

Docket No. 144045. Submitted April 6, 1993, at Detroit. Decided
September 7, 1993, at 9:10 A.M.

The Department of Treasury brought an action in the Wayne
Circuit Court against Comerica Bank, seeking funds held by the
bank in a joint account, one of the owners of which was
allegedly a delinquent taxpayer. On April 20, 1990, the depart-
ment had·issued a warrant and notice of levy regarding the
account, held by Intissar and Mariam Ismail. The levy stated
that Youssef and Intissar Ismail, who are husband and wife,
owed personal income taxes and intangibles taxes. On May 18,
1990, the bank paid the department only one-half of the bal-
ance of the joint account, contending that a joint tenant in a
bank account is the presumptive owner of only fifty percent of
the account. On May 22, 1990, at a hearing regarding Youssef
and Intissar Ismail's tax liability, the department's representa-
tives determined that Youssef and Intissar were not liable for
the taxes with regard to which the warrant and levy had been
issued. However, Youssef Ismail and the department's represen-
tatives then agreed that all money obtained pursuant to the
levy would be applied on an outstanding debt for sales tax owed
by a business owned by Youssef Ismail individually. There was
no evidence presented regarding Intissar Ismail's role, if any, in
her husband's business, her liability for the sales tax debt, or
Youssef Ismail's authority to apply Intissar Ismail's property to
his business' sales tax debt. Although the matter was settled on
May 22, 1990, the assessments for Youssef and Intissar Ismail's
personal income taxes and intangibles taxes were not formally
canceled until March 4, 1991. When the bank did not remit the
remaining one-half of the joint account following receipt of a
formal demand letter dated August 16, 1990, the department
brought this action, seeking the remaining one-half of the
account and a penalty of one-half of that amount pursuant to
MCL 205.25(3); MSA 7.657(25)(3). The complaint stated that
Youssef and Intissar Ismail were indebted to the plaintiff for
taxes and did not disclose that the plaintiff had agreed to
cancel the underlying assessments against Youssef and Intissar
Ismail. The assessments were formally ˙canceled before the
trial. After a bench trial, the court, John H. Hausner, J., ruled
that pursuant to MCL 205.25; MSA 7.657(25), and upon presen-

tation of a warrant and levy, the plaintiff may levy upon all property and rights to property belonging to the taxpayer, including funds in a joint bank account on the basis of the taxpayer's right to withdraw all the funds. The court ordered the defendant to surrender the remaining funds in the joint account, but did not impose a penalty. The defendant appealed.

The Court of Appeals *held:*

1. The issue presented is essentially hypothetical. For that reason, the opinion is purely advisory, and is nonbinding dicta.

2. Pursuant to MCL 205.25; MSA 7.657(25), the defendant should have paid to the plaintiff the entire amount in the account held jointly by Intissar and Mariam Ismail.

Affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *E. David Brockman* and *Marci B. McIvor,* Assistant Attorneys General, for the plaintiff.

*Michael F. Main, Michael D. Boutell, Christian Nilson, Paul W. Creasy, Lawrence J. Sauter, Elias Muawad,* and *Kurt M. Carlson,* for the defendant.

Before: HOOD, P.J., and BRENNAN and CORRIGAN, JJ.

CORRIGAN, J. In this action to determine rights to a delinquent taxpayer's assets, defendant bank appeals the circuit court's ruling, pursuant to the levy statute, MCL 205.25; MSA 7.657(25), that it should have paid over to plaintiff Department of Treasury the entire amount in an account held jointly by taxpayer Intissar Ismail and an innocent third party, Mariam Ismail, who was not named in the levy. We affirm.

On April 20, 1990, plaintiff issued a warrant and notice of levy for a joint account at Manufacturers National Bank (now Comerica Bank). The levy stated that Youssef and Intissar Ismail, who are husband and wife, owed $55,717.43 in Michigan personal income taxes and intangibles taxes. The

warrant was served on April 23, 1990.[1] On May 18, 1990, defendant paid to plaintiff the sum of $15,714.53. That sum represented one-half of the balance in the joint account at the bank, held by Intissar and Mariam Ismail (*not* Intissar and Youssef Ismail). Defendant did not remit the remaining one-half, contending that a joint tenant in a bank account is the presumptive owner of only fifty percent of the account.

On May 22, 1990, four days after defendant had paid plaintiff one-half of the balance of the account, a hearing was held regarding Youssef and Intissar Ismail's tax liability. From the facts before us, we cannot ascertain whether Intissar Ismail attended or was represented at that hearing. At the hearing, plaintiff's representatives determined that Youssef and Intissar Ismail were *not* liable for the unpaid personal income taxes or intangibles taxes as to which the warrant and levy had been issued. Youssef Ismail and plaintiff's representatives then agreed that all money obtained pursuant to the levy would be applied on an outstanding debt of $91,000 for sales tax owed by Youssef Ismail's business, "Scoopy's Fill-Up." The record is silent regarding Intissar Ismail's role, if any, in Youssef Ismail's business and her liability for the sales tax debt. It is also silent as to Youssef Ismail's authority to apply his wife's property to his business' sales tax debt. Although plaintiff apparently settled the matter with the taxpayers on May 22, 1990, the assessments for personal income taxes and intangibles taxes were not formally canceled by plaintiff until March 4, 1991, when plaintiff approved the May 22, 1990, determination.

---

[1] Although the parties' stipulated facts state that the warrant was served on May 2, 1990, the warrant itself indicates that service was accomplished on April 23, 1990.

Nonetheless, plaintiff continued in June and July of 1990 to attempt to recover from defendant the balance of the Intissar-Mariam account, culminating in a formal demand letter dated August 16, 1990. Defendant did not remit the remainder of the Intissar and Mariam Ismail joint account. Plaintiff filed suit in the Wayne Circuit Court on October 10, 1990, representing to the court that both taxpayers were indebted to plaintiff for unpaid taxes. However, as the proceedings on May 22, 1990, established, this representation in the complaint was no longer accurate. In addition to seeking the $15,714.53 remaining in the account, plaintiff sought a penalty of one-half that amount ($7,857.26), pursuant to MCL 205.25(3); MSA 7.657(25)(3). Neither the August 16 demand letter nor the October 10 complaint disclosed that plaintiff had agreed to cancel the underlying assessments against Intissar and Youssef Ismail; indeed, the complaint represented that "Youssef and Intissar Ismail *are* indebted" to plaintiff for 1983 and 1984 taxes [emphasis supplied].[2]

The matter was submitted to the court on stipulated facts, both parties agreeing to the need for a judicial determination of the question. Neither party, however, explained on what basis plaintiff continued to pursue a demand against the joint account of *Intissar* and *Mariam* Ismail, when—well before August 16, 1990—plaintiff knew that the only tax liability was *Youssef* Ismail's sales tax liability for the operation of his individual business, Scoopy's Fill-Up. By the time of the trial, plaintiff had abandoned its claim for the remaining $15,714.53 in the Intissar and Mariam Ismail

---

[2] The court noted that "there was a personal tax liability or something which was thrown out, and then they reassessed it on the sales tax." Plaintiff's counsel replied, "I believe they were—it was not as to the ownership of the money. What they did is that they—it was on the basis, the assessment itself."

account because the assessments had been formally canceled. The discussion of damages related to the fifty percent penalty. Plaintiff conceded that it had only a weak claim because defendant's withholding of the money was not "unreasonable."

After a bench trial, the court ruled that pursuant to MCL 205.25; MSA 7.657(25), and *upon presentation* of a warrant and levy, the plaintiff may levy upon all property and rights to property belonging to the taxpayer, including "funds in a joint bank account based upon the taxpayer's rights to withdraw all of said funds."[3] The court ordered defendant to surrender the remaining funds in the Intissar and Mariam Ismail account, but did not impose any "costs or penalties . . . because a public issue is involved." Defendant appealed. Although we would be inclined to find in plaintiff's favor on the underlying legal issue, we recognize that our opinion on this question is purely advisory. In the factual posture of this case, the issue presented is essentially hypothetical. We have *no* record evidence that Youssef Ismail had any legal right to the Intissar and Mariam Ismail joint account at the time of the complaint, the trial, or the final order. Nonetheless, we will attempt to respond to the parties' arguments because we recognize the importance of the underlying question. Our opinion regarding this question is, however, nonbinding dicta.

It is a fundamental rule of statutory construction that where the language of a statute is clear and unambiguous, no judicial interpretation is warranted. *Victorson v Dep't of Treasury,* 439 Mich 131, 137; 482 NW2d 685 (1992). Judicial construction is permitted where the language of a statute is susceptible to more than one interpreta-

---

[3] We need not vacate this order, because it is obviously conditional, and the condition cannot come to pass.

tion. *Id.* at 138. When construing a statute, a court is obligated to ascertain and give effect to the intention of the Legislature. *Id.* Where the wording of a statute is ambiguous, we seek to discern the intent of the Legislature in light of the purpose sought to be accomplished. *Energetics, Ltd v Whitmill,* 442 Mich 38, 48; 497 NW2d 497 (1993). *Comerica Bank-Detroit v Dep't of Treasury,* 194 Mich App 77, 92; 486 NW2d 338 (1992). The scope of tax laws will not be extended by implication or forced construction. *Id.,* citing *Hart v Dep't of Revenue,* 333 Mich 248, 251; 52 NW2d 685 (1952).

Plaintiff indisputably has statutory authority to pursue assets of delinquent taxpayers in the hands of others, such as banks. MCL 205.25; MSA 7.657(25) provides in part:

> (1) . . . Except as provided in subsection (5), the commissioner or an authorized representative of the commissioner . . . may levy on all property and rights to property, real and personal, tangible and intangible, belonging to the taxpayer or on which a lien is provided by law for the amount of the deficiency, and sell the real and personal property of the taxpayer found within the state for the payment of the amount due, the cost of executing the warrant, and the additional penalties and interest. Except as provided in subsection (6) [permitting service by certified mail], the officer or agent serving the warrant shall proceed upon the warrant in all respects and in the same manner as prescribed by law in respect to executions issued against property upon judgments by a court of record.

The dispute in this case centers on the method by which such assets may be collected.

Regarding this question of first impression, no Michigan case is squarely on point. We find that *United States v Nat'l Bank of Commerce,* 472 US

713; 105 S Ct 2919; 86 L Ed 2d 565 (1985), provides guidance. In *Nat'l Bank of Commerce,* a resident of Arkansas was delinquent in paying federal income tax. The Internal Revenue Service filed a notice of levy against two accounts at the National Bank of Commerce, both held in the name of the taxpayer and two other parties, neither of whom was subject to the IRS levy. *Id.* at 715. All three individuals were authorized to make withdrawals from either account. *Id.* at 716. The bank refused to comply with the levy and the United States brought suit. *Id.*

The analogous portion of the federal tax code is essentially identical to the relevant portion of MCL 205.25; MSA 7.657(25):

> If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. [26 USC 6331(a).]

The Court explained that state law determines the taxpayer's property and rights to property, but that, once those are established, "the tax consequences . . . are dictated by federal law." 472 US 722. The IRS "steps into the taxpayer's shoes," *id.* at 725, and acquires "whatever rights the taxpayer himself possesses." *Id.* Because the taxpayer had a right under state law to make withdrawals from the accounts, *id.,* and "[c]ommon sense dictates that a right to withdraw qualifies as a right to property for purposes of §§ 6331 and 6332," *id.,* the Court held that the levy extended to the full

amount in both joint accounts. *Id.* at 726. See, also, e.g., *Comm'r of Internal Revenue v Stern,* 357 US 39, 45; 78 S Ct 1047; 2 L Ed 2d 1126 (1958) (in diversity cases, federal courts must apply state decisional law in defining state-created rights, obligations, and liabilities); *United States v General Motors Corp,* 929 F2d 249, 252 (CA 6, 1991); *William L Comer Family Equity Trust v United States,* 732 F Supp 755, 758 (ED Mich, 1990) (state law determines the nature and extent of a taxpayer's property interests in any given property).

In Michigan, the holders of a joint bank account are joint tenants with the right of survivorship. MCL 487.703; MSA 23.303 provides:

> When a deposit shall be made, in any bank by any person in the name of such depositor or any other person, and in form to be paid to either or the survivor of them, *such deposits* thereupon and any additions thereto, made by either of such persons, upon the making thereof, *shall become the property of such persons as joint tenants,* and the same together with all interests thereon, shall be held for the exclusive use of the persons so named *and may be paid to either during the lifetime of both* . . . . [Emphasis supplied.]

Decisional law makes it plain that any of the co-owners of a joint account may withdraw the entire account. See *In re Wright Estate,* 430 Mich 463, 469, n 7; 424 NW2d 268 (1988); *Sasanas v Manufacturers Nat'l Bank of Detroit,* 130 Mich App 812, 819; 345 NW2d 621 (1983). See, also, e.g., *LaValley v Pere Marquette Employes' Credit Union,* 342 Mich 639, 643; 70 NW2d 798 (1955) (credit union could pay entire savings account to coholder, depositor's son); *Meigs v Thayer,* 289 Mich 680, 683; 287 NW 342 (1939) (co-owner who was not depositor would have had right to entire account during

depositor's lifetime); *Esling v City Nat'l Bank & Trust Co,* 278 Mich 571, 577; 270 NW 791 (1936) (either depositor could have withdrawn entire account).

Plaintiff, relying on the rights of a holder of a Michigan joint account and the *Nat'l Bank of Commerce* rule that the IRS "stands in the shoes" of a delinquent taxpayer, concludes that the Department of Treasury is entitled to levy upon the whole account. Defendant counters by citing the portion of MCL 205.25; MSA 7.657(25) that directs that "the officer or agent serving the warrant [of levy] shall proceed upon the warrant in all respects and in the same manner *as prescribed by law* in respect to executions issued against property upon judgments by a court of record" [emphasis supplied]. Defendant points out that "[a]s prescribed by law," creditors of one depositor cannot reach the entire account.[4] MCL 487.718; MSA 23.295(8) provides:

> Deposits in a statutory joint account shall be subject to the rights of creditors of the persons designated in the statutory joint account contract as owners of the funds *to the extent of the ownership,* except that the funds shall remain subject to laws applicable to transfers in fraud of creditors. [Emphasis supplied.]

In construing MCL 205.25; MSA 7.657(25), we must bear in mind that the state taxing authority is in a preferred position with respect to the taxpayer's other creditors. For example, tax liens

---

[4] Compare *American Nat'l Bank & Trust Co v Modderman,* 37 Mich App 639, 643; 195 NW2d 342 (1972) (account payable to "husband or wife" could be garnished by husband's creditor); *Muskegon Lumber & Fuel Co v Johnson,* 338 Mich 655, 659; 62 NW2d 619 (1954) (where husband mingles funds with wife's, entire fund is subject to garnishment). These decisions occurred before the enactment of MCL 487.718; MSA 23.295(8).

"shall take precedence over all other claims, encumbrances and liens" on personal property, MCL 211.40; MSA 7.81. When real property is sold for delinquent taxes, the state's lien is "a preferred or first claim upon the lands," MCL 211.60; MSA 7.104. See, e.g., *In re Rite-Way Tool & Mfg Co,* 333 Mich 551, 556; 53 NW2d 373 (1952) (tax lien superior to chattel mortgage); *In re Dissolution of Ever Krisp Food Products Co,* 307 Mich 182, 207; 11 NW2d 852 (1943) (personal tax lien takes precedence over mortgage lien); *Michigan Nat'l Bank v Auburn Hills,* 193 Mich App 109, 110; 483 NW2d 436 (1992) (tax lien superior to interests of secured party).

Our review of this matter is complicated by the parties' eagerness to obtain a judicial determination of the question presented, i.e., whether a tax levy extends to all the funds in a joint account. The realities of the actual case, however, are such that it is not an appropriate vehicle to resolve the underlying question. Youssef and Intissar Ismail owed a tax debt. Plaintiff levied on an account owned, in part, by Intissar. But plaintiff withdrew its claim to the levied funds at a hearing four days later, and well before plaintiff began its efforts to collect the remaining funds in the account. By the time plaintiff filed its complaint on this record, it actually had no legal claim to the remaining funds in the account of the taxpayer wife and the innocent third party.[5]

Although Youssef Ismail may have agreed that funds from that account were to be applied to the tax debt of his business, nothing in the record before us, or presented to the court below, indicates that he had the authority to make such an assignment. That is, a link in the chain is missing.

_____

[5] Youssef Ismail may have owned the funds in Intissar Ismail's account. We have no such showing on this record.

Without proof that Intissar Ismail consented to having her personal property used to satisfy her husband's obligations, plaintiff had no claim at all with regard to the account in dispute. It seems to us that defendant would have had a complete defense to the complaint, had the plaintiff been fully candid. Because neither Intissar nor Mariam Ismail was indebted to plaintiff, defendant was not "[a] person who refuses or fails to surrender any property or rights to property *subject to levy*," MCL 205.25(2); MSA 7.657(25)(2) (emphasis supplied).

Absent evidence to the contrary, co-owners are presumed to have made equal contributions to a joint account. See *Sussex v Snyder,* 307 Mich 30, 38; 11 NW2d 314 (1943). Defendant apparently relied upon this rule when it remitted only one-half of the balance in the Ismails' account to plaintiff. Plaintiff, on the other hand, argues that the restriction appearing in MCL 205.25; MSA 7.657(25), but which is *not* found in 26 USC 6331(a), is merely procedural and does not affect the taxpayer's substantive "rights to property." We agree.

As plaintiff analyzes the statute, the limitations on the levy power included in the tax code were intended to circumscribe the authority of taxing entities primarily with respect to seizures of physical property. The intent of the Legislature, plaintiff suggests, was to assure that delinquent taxpayers would be afforded the same protections available to other debtors in regard to the seizure and sale of nonliquid assets. We find support for this position in cases involving the collection of property taxes. In *Fidlin v Collison,* 9 Mich App 157, 167; 156 NW2d 53 (1967), this Court reproached a city tax collector for seizing more than $10,000 worth of property to satisfy a jeopardy assessment

of $629.32 in personal property tax. Similarly, in *Joy Management Co v Detroit,* 176 Mich App 722, 732-733; 440 NW2d 654 (1989), the Court found the seizure of $13,218.81 excessive when the delinquent tax was only $2,343.

We are mindful that a tax levy is not a final determination of rights to the property involved. As the Supreme Court said in *Nat'l Bank of Commerce, supra* at 731, "§ 6331 is a *provisional* remedy, which does not determine the rights of third parties until *after* the levy is made, in postseizure administrative or judicial hearings." (Emphasis in original.) During the lives of the codepositors in a joint account, the "actual property rights of the respective parties" are "open to adjudication." *Manufacturers Nat'l Bank v Schirmer,* 303 Mich 598, 603; 6 NW2d 908 (1942); see also *Esling, supra* at 578 ("realities of ownership" determined if "a contest in the courts" occurs during the joint lives of the depositors).

A levy on a joint account does not permanently deprive an innocent co-owner of his property. Plaintiff has represented to us that an administrative remedy is available, i.e., a co-owner's contributions to the joint account will be returned if he can establish them. An aggrieved co-owner may also bring suit in the Court of Claims. MCL 205.22; MSA 7.657(22). On balance, the state's interest in collecting its revenues exceeds the co-owner's interest in avoiding expenses associated with the pursuit of remedies.

Defendant also argues that plaintiff's levy procedure violates the rights of innocent joint-account holders to notice and hearing before their property is seized. We do not reach this issue because defendant lacks standing to raise this constitutional issue on behalf of third parties. To have standing, a party must have a legally protected

interest that is in jeopardy of being adversely affected. *Bowie v Arder,* 441 Mich 23, 42; 490 NW2d 568 (1992). Defendant has no "legally protected interest" in Mariam Ismail's property. Had the entire account been paid over to plaintiff, defendant would have a complete defense to any suit by the codepositor:

When a deposit has been made, or shall hereafter be made, in any banking institution transacting business in this state, in the names of two or more persons, payable to either or the survivor or survivors, such deposit or any part thereof or any interest or dividend thereon and any additions thereto, made by any one of the said persons, shall become the property of such persons as joint tenants, and the same shall be held for the exclusive use of the persons so named and may be paid to any one of said persons during the lifetime of said persons or to the survivor or survivors after the death of one of them, and *such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits* prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof. [MCL 487.703; MSA 23.303.]

Affirmed.