*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ELLEN M. ANDARY, a Legally Incapacitated Person, by and through her Conservator and Guardian, MICHAEL T. ANDARY, M.D., PHILIP KRUEGER, a Legally Incapacitated Person, by and through his Guardian, RONALD KRUEGER, and MORIAH, INC., doing business as EISENHOWER CENTER,

       Plaintiffs-Appellants,

v

USAA CASUALTY INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA,

       Defendants-Appellees.

FOR PUBLICATION
August 25, 2022
9:00 a.m.

No. 356487
Ingham Circuit Court
LC No. 19-000738-CZ

Before: MARKEY, P.J., and SHAPIRO and PATEL, JJ.

SHAPIRO, J.

The question in this case is whether legislative amendments to the no-fault act, MCL 500.3101 *et seq*., limiting reimbursement for expenses covered by personal protection insurance apply retroactively so as to limit benefits to those injured before the effective date of the amendments. We conclude that they do not because the Legislature did not clearly demonstrate an intent for the amendments to apply retroactively to persons injured in pre-amendment accidents. We further conclude that even if retroactive intent had been demonstrated, imposing the new limits would substantially impair no-fault insurance contracts entered into before the amendments' effective date, and therefore would violate the Contracts Clause of the Michigan Constitution.

## I. BACKGROUND

Since the inception of the no-fault act in 1973, Michigan law has required that personal protection insurance (PIP) policies provide for payment of "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care,

recovery or rehabilitation." MCL 500.3107(1)(a). Previously, the rates of reimbursement were limited only by what constituted "reasonable" and "customarily charge[d]" fees. MCL 500.3157, as enacted by 1972 PA 294. And there was no cap on the amount of attendant care that could be provided by family.

Effective June 11, 2019, the Legislature enacted 2019 PA 21 and 2019 PA 22, both of which made significant amendments to the no-fault act. Relevant to this case, 2019 PA 21 amended MCL 500.3157 to include fee schedules limiting a medical provider's reimbursement amount.[1] This case specifically concerns MCL 500.3157(7), which caps a provider's reimbursement for services not covered by Medicare to 55 percent of the fees charged as of January 1, 2019.[2] Also at issue is MCL 500.3157(10), which limited the reimbursable hours of family-provided attendant care to 56 hours per week.[3]

Plaintiffs Ellen Andary and Philip Krueger are individuals who suffered traumatic brain injuries in motor vehicle accidents prior to June 11, 2019. Both Andary and Krueger are permanently disabled as a result of their respective accidents. Andary requires 24-hour in-home attendant care, most of which is performed by family members. Krueger is a patient at plaintiff Eisenhower Center, which provides inpatient living accommodations and rehabilitative services to

---

[1] The fee schedules went into effect on July 1, 2021. See MCL 500.3157(2); MCL 500.3157(7)(a)(*i*).

[2] More specifically, MCL 500.3157(7)(a) provides that, if MCL 500.3157(2) applies, and the treatment or rehabilitative training is not compensable by Medicare,

> the applicable following percentage of the amount payable for the treatment or training under the person's charge description master in effect on January 1, 2019 or, if the person did not have a charge description master on that date, the applicable following percentage of the average amount the person charged for the treatment on January 1, 2019:
>
> (*i*) For treatment or training rendered after July 1, 2021 and before July 2, 2022, 55%.
>
> (*ii*) For treatment or training rendered after July 1, 2022 and before July 2, 2023, 54%.
>
> (*iii*) For treatment or training rendered after July 1, 2023, 52.5%. [MCL 500.3157(7)(a).]

[3] MCL 500.3157(10) provides in part that "[f]or attendant care rendered in the injured person's home, an insurer is only required to pay benefits for attendant care up to the hourly limitation in section 315 of the worker's disability compensation act of 1969, 1969 PA 317, MCL 418.315." In turn, MCL 418.315 provides that "[a]ttendant or nursing care shall not be ordered in excess of 56 hours per week if the care is to be provided by the employee's spouse, brother, sister, child, parent, or any combination of these persons."

individuals with traumatic brain injuries. The vast majority of the residential patients at Eisenhower Center are victims of motor vehicle accidents, and the services Eisenhower Center provides to them are reimbursed through the no-fault system. Most of the services performed by Eisenhower Center are not compensable under Medicare, however.

The defendants in this case are the insurers responsible for providing no-fault benefits to the two injured plaintiffs, respectively. At the time of their respective accidents, Andary was covered under a PIP policy issued by defendant USAA Casualty Insurance Company; Krueger was covered under a PIP policy issued by defendant Citizens Insurance Company of America.

In this declaratory action, the injured plaintiffs assert that because they (1) were injured prior to the effective date of 2019 PA 21, and (2) have vested contractual rights under the policy in effect when they were injured, they are not subject to 2019 PA 21's limitations on benefits and payment contained in MCL 500.3157(7) and (10). Plaintiffs further argue that the limitations on payments violate the Contracts Clause of the Michigan Constitution and their constitutional rights to equal protection and due process. In lieu of filing an answer, defendants filed a motion for summary disposition under MCR 2.116(C)(8) (failure to state a claim). They argue that regardless of when Andary's and Krueger's injuries occurred, they are subject to the newly enacted limitations of MCL 500.3157, and that this does not violate that Contracts Clause or any other constitutional provision. Defendants also assert that no factual development is necessary to consider plaintiffs' constitutional challenges to the future application of the 2019 amendments. The trial court agreed with defendants and granted them summary disposition as to all counts. The court also denied plaintiffs' motion to amend the complaint to include a breach-of-contract claim. This appeal followed.[4]

## II. DISCUSSION

## A. RETROACTIVITY

The first question presented by this appeal is whether the Legislature intended MCL 500.3157(7) and (10) to apply retroactively to those injured before 2019 PA 21's effective date.

Statutes and amendments of statutes are presumed to operate prospectively. *Davis v State Employees' Retirement Bd*, 272 Mich App 151, 155; 725 NW2d 56 (2006). To overcome this presumption, the Legislature must clearly manifest an intent for retroactive application. *Johnson*

---

[4] We review de novo a trial court's decision on a motion for summary disposition. See *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a complaint by the pleadings alone. *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994). All well-pleaded factual allegations are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the allegations. *Peters v Dep't of Corrections*, 215 Mich App 485, 486; 546 NW2d 668 (1996). We also review de no whether a statute applies retroactively, see *Johnson v Pastoriza*, 491 Mich 417, 428-429; 818 NW2d 279 (2021), and questions of constitutional law, *Janer v Barnes*, 288 Mich App 735, 737; 795 NW2d 183 (2010).

*v Pastoriza*, 491 Mich 417, 429; 818 NW2d 279 (2012).  As stated by this Court in *Davis*, 272 Mich App at 155, "[t]he Legislature's expression of an intent to have a statute apply retroactively *must be clear, direct, and unequivocal* as appears from the context of the statute itself." (Emphasis added).  Given the presumption against retroactive application of statutory amendments, courts commonly apply the version of the no-fault act in effect at the time of the accident.  See e.g., *Fuller v GEICO Indemnity Co*, 309 Mich App 495, 501; 872 NW2d 504 (2015) (applying the definition of "registrant," MCL 500.3101(2)(i), in effect "at the time of the accident . . . ").[5]

Defendants argue that the Legislature clearly stated its intention in 2019 PA 21 for the newly imposed limits contained within MCL 500.3157 to apply to those injured before their effective date.  However, defendants fail to identify *any* language within chapter 31 of the Michigan Insurance Code, i.e., the no-fault act, so indicating, either explicitly or by implication.  Indeed, 2019 PA 21 provided an effective date of June 11, 2019, and it contains no language referring to retroactive application.  See *Brewer v AD Transport Exp, Inc*, 486 Mich 50, 56; 782 NW2d 475 (2010) ("[P]roviding a specific, future effective date and omitting any reference to retroactivity supports a conclusion that a statute should be applied prospectively only.") (quotation marks and citation omitted).

Defendants direct this Court only to 2019 PA 21's inclusion of a new provision, MCL 500.2111f, within chapter 21 of the Insurance Code, which they assert demonstrates an intent to retroactively apply the amendments by implication.  We disagree.  Chapter 21 of the Insurance Code does not define the benefits and payments that must be provided to no-fault policy beneficiaries.  Rather, MCL 500.2111f merely defines how premium rates are to be determined under the new no-fault scheme.  Defendants specifically rely on MCL 500.2111f(8), which provides that in its rate filings, "An insurer shall pass on . . . savings realized from the application of section 3157(2) to (12) to treatment, products, services, accommodations, or training rendered to individuals who suffered accidental bodily injury from motor vehicle accidents that occurred before July 2, 2019."  But this rate-setting provision does not mandate that the limits on benefits provided in MCL 500.3157 shall be applied to persons injured before its effective date.  And the claim that it does so by implication is very weak.  The statute merely provides that if there are such

---

[5] See also *Hmeidan v State Farm Mut Auto Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued November 18, 2021 (Docket No. 351670), p 2 (holding that the trial court "erred by failing to apply the version of MCL 500.3113(a) in effect at the time of plaintiff's accident . . . ."); *Mullen v Progressive Marathon Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued October 22, 2020 (Docket No. 350015), p 7 n 1 (noting that "2019 PA 21 amended many of the statutes at issue in this case," but applying the version of the no-fault act "in effect at the time of plaintiff's accident.").  Although not binding precedent, a court may consider unpublished opinions for their instructive or persuasive value. *Cox v Harman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

We also note that in *Jones v Esurance Ins Co (After Remand)*, unpublished per curiam opinion of the Court of Appeals, issued February 25, 2021 (Docket No. 351772), p 6, this Court agreed with the defendant insurer that 2019 PA 21's amendment to MCL 500.3145 adding a statutory tolling provision to the one-year-back rule did not apply retroactively.

savings, they must be used to reduce future rates. Whether such savings will occur is not defined by this statute. For these reasons, we conclude that MCL 500.2111f does not "clearly, directly and unequivocally" demonstrate an intent to apply the new limits retroactively.[6] *Davis*, 272 Mich App at 155.

As stated, defendants do not identify *any* language within Chapter 31 itself mandating application of benefit reductions to those injured prior to 2019 PA 21's effective date, either explicitly or implicitly. Had the Legislature wished to overcome the presumption against retroactivity, it surely could have expressed its intent plainly, directly and unequivocally, but it did not do so.[7] We will not find legislative intent to apply the new benefit limitations to those injured prior to 2019 PA 21's effective date based solely on a rate-setting provision that does not mandate it.

---

[6] We note that our view of the amendments' prospective application is consistent with the one expressed by the Director of the Michigan Department of Insurance and Financial Services (DIFS) at a videotaped town hall meeting after the no-fault amendments were adopted. The Director was asked by a participant whether her sister, who was injured before the effective date of the amendments, would lose her unlimited benefits. The Director responded:

> [T]he answer for that is that that's one of the big differences between healthcare and auto insurance. We know that with your health insurance if you have it today you go to the doctor you have coverage and they'll pay all or some of your cost, but if you lose your job or your health care today and tomorrow you go, you have no coverage. *With auto insurance it vests or becomes fixed at the benefit on the day of your accident.* So your sister having lifetime medical under that policy, will forever have unlimited coverage for the medical costs associated with that accident as long as she needs them. So you're under the old law, and under the current law, *it's the date of the accident and the coverage that was in place* [on that date] that matters for what kind of coverage you have. [<https://www.youtube.com/watch?v=gBhlWJ6Cn_0&t=2958s> at 48:25 to 49:32 (accessed August 17, 2022) (emphasis added; minor, nonsubstantive edits were made to the DIFS Director's answer for readability).]

Despite the Director's view expressed at the town hall meeting, the DIFS has filed an amicus brief in this case supporting defendants' position. The DIFS amicus brief does not explain why its position is contrary to the stated view of its Director or how the Director could have failed to perceive what the DIFS now asserts was *clear, direct and unequivocal* legislative intent to apply the new limits to those injured before its effective date.

[7] While our use of legislative bill analyses is limited, see *Frank W Lynch v Flex Technologies, Inc*, 463 Mich 578, 587; 624 NW2d 180 (2001), we cannot help but note that in the scores of pages issued by the Legislative Service Bureau regarding 2019 PA 21, no reference is made to application of the newly imposed limits to those who were injured prior to its adoption. Nor do they refer to MCL 500.2111f as mandating such application.

Defendants alternatively argue that the issue of retroactivity is a red herring because the benefit reductions apply only to claims made after the amendments' effective date. But this argument runs afoul of the principle defined in *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26; 852 NW2d 78 (2014).

*LaFontaine* concerned the applicable "market area" of an automobile dealership, i.e., the size of the area around the dealership in which a manufacturer could not establish a new dealership without notifying the existing dealer, who then had a right to object. *Id*. at 28. When the plaintiff dealership was established in 2007, the relevant radius of each dealer's market area was defined by statute as six miles. *Id*. at 29. However, in 2010 the Legislature passed an amendment which—to the dealers' benefit—expanded this area to nine miles. *Id*. at 28. The question as to which limit applied arose in *LaFontaine* because the defendant manufacturer case sought to establish a new dealership more than six miles but less than nine miles away from the plaintiff. *Id*. at 30-31. The manufacturer argued that the 2010 amendment did not apply because the new statute could not be applied retroactively to a dealer agreement entered into before the amendment's effective date. See *id*. at 32.

The 2007 dealer agreement between the parties did not contain any limits on the manufacturer's ability to open additional nearby dealerships. *Id*. at 37-38. Accordingly, the issue was solely whether the statute applied retroactively and did not involve a claim of breach of contract or violation of the Contracts Clause. As the Supreme Court noted, "any right [the dealer] has against encroachment by like-line dealers is a creature of statute." *Id*. at 38. In other words, the only question was whether the amended statute applied going forward to all dealerships, or whether those operating before the 2010 amendment were only entitled to the protections afforded by the pre-amendment statute.

The Supreme Court first determined that "nothing in the language of [the amended statute] suggests the legislative intent that the law apply retroactively." *Id*. at 39. The Court reasoned that "[t]he Legislature knows how to make clear its intention that a statute apply retroactively,"[8] and the lack of such explicit language "undermines any argument that [the amendment] was intended to apply retroactively." *Id*. at 39-40 (quotation marks and citation omitted). Relevant to defendants' argument in this case, the Court was not persuaded by the dealer's contention that retroactivity was not at issue because it did not invoke the protection afforded by the 2010 amendment until after it went into effect. *Id*. at 40. See also *id*. at 31-32. Significantly, the Court held that to apply the nine-mile rather than six-mile limit would constitute retroactive application of the 2010 amendment, even though the new dealership would not be established until after the amendment's effective date.[9] See *id*. at 40-41. The Court explained that the question of

---

[8] The Court noted that when adopting other amendments to the Motor Vehicle Dealer Act (MVDA), MCL 445.1561 *et seq*., the Legislature had included language "explicit[ly] provid[ing] that they apply to pre-existing contracts." *LaFontaine*, 496 Mich at 39.

[9] A sub-issue in *LaFontaine* concerned whether the manufacturer's "Letter of Intent to Add Vehicle Line" (LOI) with the new dealer, which was signed before the amendment's effective date, constituted a dealer agreement. If so, then that agreement, being entered into before the

retroactivity concerned whether application of the 2010 amendment would "create a new liability in connection with a past transaction," i.e., the parties' 2007 agreement. *Id*. at 41 (quotation marks and citation omitted). The Court then determined that the amendment would impose a "new obligation" on the manufacturer that it

> did not bargain for or contemplate this obligation at the time of its 2007 Dealer Agreement . . . when the [the pre-amendment statute] imposed only a relevant market area of six miles. Rather, [the manufacturer] *had the settled expectation at the time of its 2007 agreement* that it could establish a like-line dealership anywhere outside a six-mile radius of [the dealer's] place of business. [*Id*. at 40-41 (emphasis added).]

Just as in *LaFontaine*, defendants' argument that the amendments are prospective because they will apply only to benefit claims made after July 1, 2021, misses the mark. It was immaterial in *LaFontaine* that the dealer was seeking to invoke the 2010 amendment after its effective date. Instead, the Court was concerned with how the application of the amended statute—even as to future events—would affect the rights and obligations established by the prior statute. This is because a retroactivity analysis requires courts to determine whether applying the new statute will "impair vested rights acquired under existing laws or create new obligations or duties with respect to transactions or considerations already past." *LaFontaine*, 496 Mich at 39. As noted in *LaFontaine*, retroactive application of legislation "presents problems of unfairness . . . because it can deprive citizens of legitimate expectations and upset settled transactions." *Id*. at 38 (quotation marks and citation omitted). See also *Nash v Robinson*, 226 Mich 146, 149; 197 NW 522 (1924) ("Courts, as a rule, are loath to give retroactive effect to statutes and this is especially so when, by so doing, it would disturb contractual or vested rights."). Accordingly, in this case, we must examine how the application of MCL 500.3157(7) and (10) to those injured before 2019 PA 21's effective date would impair the parties' pre-amendment rights and obligations.

On the date of the accidents,[10] the recovery of PIP benefits for an injured person's care, recovery or rehabilitation was limited only by the reasonableness and necessity of the provider's customary charges. See MCL 500.3107(1); former MCL 500.3157. These statutory provisions were expressly referenced or incorporated into the pre-amendment no-fault policies. See *LaFontaine*, 496 Mich at 35-36. Therefore, insureds and those whose benefits are provided by their policies had a legitimate expectation that should they be injured in a motor vehicle accident, they would receive unlimited lifetime benefits, so long as the charges were reasonable and the care reasonably necessary.[11] These individuals "did not bargain for or contemplate," *id*. at 26, that

---

amendment became effective would be subject to the six-mile limit. However, the Supreme Court held that the LOI was at most "an agreement to agree" and so was irrelevant, and the relevant date was that on which the manufacturer actually entered into a dealer agreement with a new dealership. See *LaFontaine*, 496 Mich at 36-37.

[10] Krueger's and Andary's auto accidents occurred in 1990 and 2014, respectively.

[11] Contrary to defendants' argument, the fee schedules and attendant-care cap do not merely clarify the meaning of a "reasonable charge." 2021 PA 19 make no reference to the fee schedules and

limits would be placed on the amount of attendant care family members can provide an injured person, or that treatment not compensable by Medicare would be limited to 55 percent reimbursement from the insurer. And these new limitations do not create minor or collateral effects on those settled expectations; to the contrary, they directly and drastically limit the ability of motor vehicle accident victims to continue to obtain the care they require. Indeed, accident victims and those who care for them have relied on these benefits for nearly 50 years. Severely injured individuals and their families have made long-term life changes based on the pre-amendment no-fault act. Some in reliance on the promise of unlimited PIP benefits may have foregone the opportunity to make alternative arrangements in the event of catastrophic injury (e.g., purchase of disability or accidental injury insurance) as a substitute. And some family members providing attendant care have chosen to leave employment and forego income and careers so that their loved one may be cared for at home by family rather than in an inpatient care facility. Finally, the number of catastrophically injured individuals that would be affected by retroactive application of the amendments is by no means *de minimis*. According to the Michigan Catastrophic Claims Association (MCCA), there are more than 17,000 victims of pre-amendment auto accidents whose benefits would be cut.[12]

From the insurers' perspective, retroactive application would yield a windfall with no corresponding benefit to their insureds. The premiums and reserves for pre-amendment PIP policies were set by insurers based upon the risk that the persons covered might need lifetime care for catastrophic injuries. Put simply, the insurers have already collected premiums in an amount sufficient to provide unlimited benefits,[13] and to release them from that responsibility would substantially diminish their well-settled obligations under the pre-amendment no-fault scheme.

To summarize, the ongoing benefit claims in this case stem from motor vehicle accidents that occurred before the effective date of the revised statute, and the PIP policies covering the injured plaintiffs provided for unlimited benefits. We therefore conclude that the amendments would substantially alter the "settled expectation[s]" and long-term reliance of auto accident victims. See *LaFontaine*, 496 Mich at 41. See also *INS v St Cyr*, 533 US 289, 321; 121 S Ct 2271; 150 L Ed 2d 347 (2001) ("[T]he judgment whether a particular statute acts retroactively should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations.") (quotation marks and citation omitted).

---

attendant-care cap being reasonable, nor is there a definition of "reasonable" added in the amendment.

[12] "The MCCA is an unincorporated nonprofit association, whose purpose is to provide insurers with indemnification for PIP policies that exceed a certain threshold." *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n* (*On Rehearing*), 484 Mich 1, 18; 795 NW2d 101 (2009). According to the MCCA's website, there are 17,542 open catastrophic claims. <http://michigancatastrophic.com/Consumer-Information/Claim-Statistics> (accessed August 17, 2022).

[13] The MCCA must assess premiums against insurers in an amount that is sufficient to cover the lifetime claims of all persons expected to be catastrophically injured in that year. See MCL 500.3104(7)(d).

Under *LaFontaine*, even if defendants are correct that no-fault benefits are purely statutory, the relevant statute is the one that existed when the policies were issued. But we reject defendants' characterization; PIP benefits are not *purely* statutory in nature. The no-fault act sets the mandatory minimum coverage for PIP policies and is the "rule book" for disputes over that coverage, *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 524-525; 502 NW2d 310 (1993), but it does not follow that the policies sold by insurers promising unlimited lifetime care are nullities. Indeed, suits against insurers for PIP benefits are brought as contract actions, and insurers may pursue traditional contract defenses not have not been abrogated by the no-fault act. See *Meemic Ins Co v Fortson*, 506 Mich 287, 300-303; 954 NW2d 115 (2020). It is clear therefore that a PIP policy confers enforceable contract rights upon those entitled to benefits.

We are also unpersuaded by defendants' arguments that the injured plaintiffs could not have reasonably relied on the benefits provided by defendants' policies and the no-fault act as it existed at the time of the accident because they had no vested right in the continuation of the no-fault act as it existed on the date of their accidents. Defendants rely heavily on the workers' compensation cases of *Lahti v Fosterling*, 357 Mich 578; 99 NW2d 490 (1959), and *Romein v Gen Motors Corp*, 436 Mich 515; 462 NW2d 555 (1990). They argue that plaintiffs in this case, like the employers in *Lahti* and *Romein*, could not have relied on the law as it existed when the injury occurred. These cases are, however, distinguishable on several grounds.

First, the workers compensation system is wholly a creature of statute and regulation. The only contracts at issue in *Lahti* and *Romein* were the unwritten employment contracts, see *Lahti*, 357 Mich at 584, which do not outline a right to workers' compensation if injured or any amounts to be paid. In contrast, under the PIP policies issued by defendants, the injured plaintiffs have contractual rights to reimbursement for attendant-care services and other medical care without limitation.

Second, *Romein* presented unique circumstances. In 1981 the Legislature enacted a statute, effective in 1982, providing for coordination of workers' compensation benefits with other sources such as pension plans. *Romein*, 436 Mich at 521. Although the statute was silent on retroactivity, the defendant corporation applied it to those injured before 1982, and in 1985 the Supreme Court upheld that practice. *Id*. at 522-523. The Legislature then passed a statute that made clear that the coordination provided by the 1981 act did not apply to those injured before its effective date and required employers to repay injured employees sums that had been deducted from their benefits as a result of coordination. *Id*. at 523. The employer then brought an action asserting in part that the 1987 act violated due process because it modified the employer's liability for the period during which coordination had been permitted.[14] *Id*. The Supreme Court explained that the 1987 amendment was specifically intended to correct what the Legislature determined was an improper interpretation of the 1981 act by the Courts: "[I]t is clear that the Legislature was modifying the coordination of benefits provision to cure a perceived defect resulting from the interpretation of the prior law [by the Court]. Therefore, the amendment is remedial." *Id*. at 531-532.

---

[14] The 1987 amendment was expressly retroactive, and *Romein* concerned only constitutional challenges to the retroactive effect. See *Romein*, 436 Mich at 523-539.

Defendants in this case argue that the 2019 amendments to the no-fault act were "remedial" because the original no-fault act needed alteration in order to lower rates and benefits. To call that "remedial" legislation is far too broad a use of the term. The amendments were not aimed at a narrow problem regarding a technical or procedural difficulty or an attempt to correct what the legislature viewed as an erroneous judicial interpretation of an existing statute. See *Frank W Lynch Co v Flex Technologies, Inc*, 463 Mich 578, 585; 624 NW2d 180 (2001) (" '[R]emedial' in this context should only be employed to describe legislation that does not affect substantive rights."); *Allstate Ins Co v Faulhaber*, 157 Mich App 164, 167; 403 NW2d 527 (1987) ("A statute is considered remedial or procedural if it is designed to correct an existing oversight in the law or redress an existing grievance."). Rather, they enacted far-reaching alterations to a statutory scheme that had stood for 50 years and on which virtually the entire population of the state relied. It is a broad policy-based change, not a remedial statute.[15]

Finally, the *Romein* Court made clear that its holding that the statute increasing workers' compensation benefits was permissibly retroactive did not mean that a statute reducing benefits would be viewed in the same light given the different reliance interests at stake. The Court was careful to note that it was *not* addressing "the constitutionality of a retroactive statutory *reduction* in workers' compensation benefit levels." *Romein*, 436 Mich at 531 n 14 (emphasis in original). The Court also noted that the multiple amendments and the Court's interpretation of them over a period of years lessened the employers' reliance interest because the law was "in a state of flux." *Id.* at 531. *Romein* also reasoned that the employers could not have reasonably relied on the pre-amendment level of benefits because workers' compensation is a "highly regulated industry" and "[t]he defendants knew that their rights were subject to alteration." *Romein*, 436 Mich at 534-535. Although the no-fault scheme is also a highly regulated area, it nonetheless remains true that, for decades, all "reasonably necessary" services have been reimbursed by PIP insurers at the reasonable and customary rates charged by providers that rendered care for persons injured in motor vehicle accidents. See MCL 500.3107(1)(a); former MCL 500.3157. And Michigan appellate courts routinely rejected challenges to limit charges based on amounts paid under workers' compensation, Medicare, Medicaid, or by private insurers.[16] Accordingly, this specific

---

[15] As noted by Justice BRICKLEY, "the term [remedial] should be used with caution, lest every amendment be deemed remedial." *Romein*, 436 Mich at 547 (BRICKLEY, J., concurring).

[16] See e.g., *Johnson v Michigan Mutual Ins Co*, 180 Mich App 314, 321-322; 446 NW2d 899 (1989) (rejecting the insurer's argument that the provider's charges must approximate those reimbursable by Medicaid); *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 114; 535 NW2d 529 (1995) (rejecting the insurer's argument that "the obligation of a no-fault carrier must be limited to what a health insurer would have had to pay if health insurance existed . . ."); *Munson Medical v Auto Club Ass'n*, 218 Mich App 375, 390; 554 NW2d 49 (1996), overruled in part on other grounds *Covenant Med Ctr, Inc v State Farm Mut Automobile Ins Co*, 500 Mich 191; 895 NW2d 490 (2017) (holding that insurer could not use workers' compensation fee schedules to determine reimbursable charges); *Mercy Mt Clemens v Auto Club Ins Ass'n*, 219 Mich App 46, 55-56; 555 NW2d 871 (1996) (holding that amounts customarily paid under workers' compensation, Medicare, Medicaid, Blue Cross Blue Shield are not relevant to whether the provider's charge were reasonable and customary).

-10-

area of the law was not in a "state of flux," *Romein*, 436 Mich at 531, and the injured plaintiffs had no reason to anticipate the significant reductions in benefits mandated by 2019 PA 21. It was therefore entirely reasonable for plaintiffs to rely on the existing statutory scheme regarding reimbursement for medical expenses.

In sum, the amended version of MCL 500.3157 contains no "clear, direct, and unequivocal," *Davis*, 272 Mich App at 155, expression of intent to have subsections (7) and (10) apply retroactively, i.e., to individuals who were injured before its effective date, even as to services provided after its effective date. Nor is such language found elsewhere in the amended no-fault act. MCL 500.2111f(8) is insufficient to overcome the presumption of retroactivity when it is located in a separate chapter of the insurance code and does not directly call for retroactive application. Further, retroactive application would alter the injured plaintiffs' settled rights and expectations under the pre-amendment no-fault act, which were obtained in exchange for premiums based on defendants' obligation to pay all reasonable charges not subject to fee schedules or caps. For these reasons, we conclude that the amendments at issue in this case may not be applied retroactively to the injured plaintiffs.

## B. CONTRACTS CLAUSE

Even if we were to conclude that the Legislature intended for 2019 PA 21 to apply retroactively to those injured before the amendments' effective date, we would nonetheless hold that retroactive application violates the Contracts Clause of the Michigan Constitution.[17]

The Contracts Clause states that "[n]o bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted." Const 1963, art 1, § 10. "[T]he purpose of the Contract Clause is to protect bargains reached by parties by prohibiting states from enacting laws that interfere with preexisting contractual arrangements." *In re Certified Question*, 447 Mich 765, 777; 527 NW2d 468 (1994). Courts apply a three-part balancing test to determine whether a violation of the Contracts Clause has occurred: (1) whether a change in state law has resulted in a substantial impairment of a contractual relationship; (2) whether the legislative disruption of contract expectancies is necessary to the public good; and (3) whether the means chosen by the legislature to address the public need are reasonable. *Aguirre v State of Mich*, 315 Mich App 706, 715-716; 891 NW2d 516 (2016).

---

[17] As noted, plaintiffs moved to amend their complaint to include a claim for breach of contract following the trial court's decision to grant summary disposition to defendants under MCR.2116(C)(8). The trial court denied the motion on the grounds that amendment of the complaint would be futile. See *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647, 657 (1997) ("If a court grants summary disposition pursuant to MCR 2.116(C)(8) . . . the court must give the parties an opportunity to amend their pleadings pursuant to MCR 2.118, unless the amendment would be futile."). This was error because, as we will now discuss, defendants' refusal to provide the benefits set out in their contract with the insureds is plainly a breach of contract. However, the breach-of-contract claim is moot given our rulings in this case.

Regarding the first prong, we conclude that there is a substantial impairment of the injured plaintiffs' rights under the policies. As discussed, under the pre-amendment no-fault policies, Andary and Krueger were entitled to reimbursement for "reasonably necessary" services at the reasonable and customary rates charged by providers that rendered care for persons injured in motor vehicle accidents. See MCL 500.3107(1)(a); former MCL 500.3157. Providers were paid without regard to fee schedules, and there was no cap on how many hours of attendant care could be provided by the injured person's family. If MCL 500.3157(7) is applied retroactively, however, reimbursement for services not compensable by Medicare will be reduced by at least 45 percent, despite being reasonably necessary for the injured party. The practical effect is that many providers will no longer be able to offer these services. Similarly, retroactive application of MCL 500.3157(10) will greatly limit the number of reimbursable hours for attendant care that may be performed by family. Again, there was no attendant-care cap under plaintiffs' policies at the time of the respective accidents.

Accordingly, retroactive application of the amendments will permanently slash the paid-for insurance benefits that are at the heart of the parties' contract. In that sense this case is comparable to the reduction in teachers' contracted-for salaries that we held violated the Contracts Clause in *ATF Mich v State (On Remand)*, 315 Mich App 602; 893 NW2d 90 (2016), aff'd in part, vacated in part by 501 Mich 939 (2017). In that case, we reasoned that "the statute directly and purposefully required that certain employers not pay contracted-for wages. Such an action is unquestionably an impairment of contract by the state." *Id*. at 616. We noted that the legislative act at issue was "not a broad economic or social regulation that impinges on certain contractual obligations by happenstance or as a collateral matter." *Id*. Although the no-fault act involves broad social policy, *ATF* does not stand for the proposition that such a statute impairing contractual rights should necessarily be upheld; rather, that is true only when the social policy regulation's effect on certain contractual obligations is simply a "collateral matter" or the result of "happenstance." *Id*. That certainly is not true in this case. The fee schedules and attendant-care cap are at the core of the no-fault amendments.

In sum, the impairments are more than substantial; they wholly remove numerous duties to be performed by one party to the contract after the other party has fully performed their duties under the contract. Accordingly, we conclude that the impairment of contract is severe.

"[I]f the legislative impairment of a contract is severe, then to be upheld it must be affirmatively shown that (1) there is a significant and legitimate public purpose for the regulation and (2) that the means adopted to implement the legislation are reasonably related to the public purpose." *Health Care Ass'n Workers Comp Fund v Bureau of Worker's Compensation Dir*, 265 Mich App 236, 240-241; 694 NW2d 761 (2005). We do not dispute defendants' arguments that 2019 PA 21 and 2019 PA 22 concerned the legitimate public purpose of lowering no-fault insurance premiums for drivers.[18] But the question as it pertains to the Contracts Clause issue in this case is whether the retroactive application of the fee schedules and attendant-care cap serve

---

[18] We note that the mandated rate reductions for PIP policies expire July 1, 2028. See MCL 500.2111f(2).

-12-

that purpose. In other words, it is the retroactive application of these specific amendments that plaintiffs allege violates the constitutional prohibition against the impairment of contracts.

Defendants do not explain what significant and legitimate public purpose justifies applying the amendments to those injured before the effective date. Nor do they explain how applying the amendments retroactively is "reasonably related" to the public purpose of lowering no-fault insurance rates. As discussed, the fee schedules and attendant-care cap drastically reduce the previously unlimited PIP benefits, and there has been no demonstration that the rest of 2019 PA 21 would be affected if the amendments are applied prospectively only. The goal of lowering insurance rates is contingent on the lowering of benefits, but because the lowering of premiums is only prospective, it would severely limit the benefits promised in the policies when higher premium rates, reflective of the greater benefits, were charged and paid for. And since the insurers have already been paid for the benefits promised under those policies, retroactive application would permit insurers to retain all the premiums paid prior to the 2019 amendments while allowing them to provide only a fraction of the benefits set out in those policies. Giving a windfall to insurance companies who received premiums for unlimited benefits is not a legitimate public purpose, nor a reasonable means to reform the system.

To summarize, the lifetime unlimited benefits that the insurers were paid for will be severely impaired if the amendments are given retroactive effect. Defendants have not shown that retroactive application of the amendments is necessary to accomplish the goal of lowering no-fault policy premiums. Nor have defendants explained how applying the amendments to those injured before the amendments' effective date is reasonable, especially considering that the relevant premiums have already been paid in full. Accordingly, we conclude that retroactively applying the amendments violates the Contracts Clause of the Michigan Constitution.

## IV. DUE PROCESS & EQUAL PROTECTION

Plaintiffs also allege that application of MCL 500.3157(7) and (10) to past, present, and future victims of motor-vehicle accidents would violate the victims' due-process and equal-protection rights. See Const 1963, art 1, § 2 (equal protection) and § 17 (due process). Defendant argue that plaintiffs have no standing to seek such relief.

"To have standing, a party must have a legally protected interest that is in jeopardy of being adversely affected." *Dep't of Treasury, Revenue Div v Comerica Bank*, 201 Mich App 318, 329-330; 506 NW2d 283 (1993). "The purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (quotation marks and citation omitted). "When a party's standing is contested, the issue becomes whether the proper party is seeking adjudication, not whether the issue is justiciable." *Tennine Corp v Boardwalk Commercial, LLC*, 315 Mich App 1, 7; 888 NW2d 267 (2016).

At the time they filed their declaratory action, Andary and Krueger had a direct interest in the question of prospective application. We therefore disagree with the trial court's conclusion that they lacked standing at that time. However, because our decision regarding retroactivity provides full relief to the injured plaintiffs, they no longer have any personal interest in whether prospective application of the amendments can survive constitutional scrutiny.

-13-

As stated in *Fieger v Comm of Ins*, 174 Mich App 467, 472; 437 NW2d 271 (1988):

>[R]egardless of the liberal policy underlying the declaratory judgment rule, a plaintiff must still allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants. Without such limitation, courts would be continually called upon to decide abstract questions on hypothetical issues.

Because their ability to obtain full PIP benefits renders them without a distinct and palpable interest in the amendments' future application, we affirm dismissal of Andary's and Krueger's claims that prospective application would violate their constitutional rights. A decision regarding the constitutionality of the amendments with respect to those injured after 2019 PA 21's effective date is not necessary "to guide [Andary and Krueger's] future conduct in order to preserve [their] legal rights." *Shavers v Kelly*, 402 Mich 554, 588; 267 NW2d 72 (1978).

This does not mean, however, that the constitutionality of 2019 PA 21's prospective application is not justiciable. To the contrary, Eisenhower Center, as a provider of care and services to catastrophically injured accident victims, clearly retains a distinct and palpable injury that our decision regarding retroactive application does not resolve.[19] Accordingly, we reverse the trial court's decision to dismiss Eisenhower Center's claims on the basis of standing. Nevertheless, we cannot now resolve the constitutional challenges given the lack of an adequate record, even on rational basis review.[20] As explained by the Supreme Court in *Shavers*, 402 Mich at 615, which involved various constitutional challenges to the no-fault act:

>There are . . . instances in which police power legislative judgments cannot be affirmed or rejected on the basis of purely legal arguments or indisputable, generally known or easily ascertainable facts which can be judicially noticed. In such instances, the facts upon which the existence of a rational basis for the legislative judgment are predicated may properly be made the subject of judicial inquiry. Thus, a court may require a trial so that it may establish adequate findings of facts to determine whether, on the one hand, plaintiffs have shown facts which reveal that the legislative judgment is without rational basis, or, on the other hand, whether there is any reasonable state of facts on the record which can be produced in support of the legislative judgment. [Quotation marks and citation omitted.]

Accordingly, consistent with *Shavers*, we remand this case for discovery necessary to

---

[19] And no-fault insureds injured after the amendments' effective date would also have such a distinct and palpable injury sufficient to seek declaratory or other relief.

[20] We decline at this time to address at this time whether a heightened level of scrutiny applies to Eisenhower Center's constitutional claims.

determine whether the no-fault amendments, even when applied only prospectively, pass constitutional muster.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. No costs are awarded, neither party prevailing in full. MCR 7.219(A). We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Sima G. Patel